[No. 5242.]
[No. 2866 C. A.]

The United States Fidelity & Guaranty Company v. Downey, as President of the Ouray Miners' Union, etc.

**Insurance — Guaranty Insurance — Noncompliance with Contract by Insured.**

A guaranty company gave a bond to a fraternal union to secure the faithful discharge of the duties of its treasurer. The bond provided that the union should notify the company immediately upon discovering any fraud or dishonesty on the part of such officer. In its application, the union stated that the treasurer's accounts would be examined and verified every three months by its board of trustees, and that the business of the union should continue to be managed as above set forth, and it stipulated therein that the answers, statements and representations therein made should be considered warranties. A quarterly examination was made in December, at which time it was found that the treasurer should have had $740 on hand. He submitted a bank book showing deposits of $440, and the balance in cash, but the amount alleged to be in the bank was not verified. In February following it was learned that he was short in his accounts. Held, that the union's failure to verify the correctness of the amount of funds in the hands of the treasurer was not a compliance with the safeguard which it had agreed to give the company, and the latter was therefore relieved of liability under its bond.—P. 418.

*Appeal from the District Court of Ouray County*
*Hon. Theron Stevens, Judge.*

Action by James R. Downey, as president of the Ouray Miners' Union No. 15, Western Federation of Miners, for the use and benefit of the union, against The United States Fidelity and Guaranty Company. From a judgment for plaintiff, defendant appeals.

*Reversed.*

Messrs. Story & Story, and Mr. Thos. Y. Bradshaw, for appellant.

Mr. John T. Barnett, Mr. John F. Wood, and Mr. John H. Murphy, for appellee.

Mr. Justice Bailey delivered the opinion of the court:

This was an action originally begun in the county court of Ouray county, and from there appealed to the district court, and from a judgment in favor of plaintiff was appealed from the district court to this court. It was brought to recover the sum of one thousand dollars and interest alleged to be due under the terms of a certain indemnifying bond executed by the appellant in favor of the Ouray Miners' Union No. 15 of the Western Federation of Miners, and given to secure the faithful discharge of his duty by one John M. Hogue, the secretary-treasurer of the union.

In the application made by the appellee for the bond, among other representations, the following appears:

"Q.   How often will his books and accounts be examined and verified with funds and property on hand and in book?

"A.   Every three months.

"Q. By whom will this be done?

"A. By the board of trustees, three persons
* The foregoing answers, statements and rep-
entations are hereby warranted to be true and cor-
.ect, and it is hereby agreed on behalf of this body
or association, in consideration of the execution of
said bond, that throughout the continuance thereof
the checks and supervisions above described shall be
faithfully observed, and that the business of said
body or association shall continue to be managed and
conducted as above set forth. The above answers,
statements and representations are to be considered
warranties, and they shall form the basis of the guar-
antee hereby applied for."

In introducing its testimony, the plaintiff pro-
duced C. C. Burge as a witness upon its behalf. He
testified that he was a trustee of the Ouray Miners'
Union during all of the period of Hogue's incum-
bency in office; that his co-trustees were Eugene
Riley and James Cox. He first learned that Hogue
was short in his accounts on the evening of Febru-
ary 16, 1901. The witness and another member of
the board made a quarterly examination of Hogue's
accounts in December, 1900. On the occasion of the
examination, Hogue gave the trustee his books and
accounts that he had in his possession. The trustees
went over them, and ascertained the amount of the
money he had received and disbursed, and, taking a
balance, found that Hogue should have on hand and
in bank seven hundred and forty dollars and some
odd cents. As the witness remembered, there was
about four hundred and forty dollars in the bank, the
balance Hogue had in cash. Hogue laid the money on
the table, and witness counted three hundred and
three dollars and some cents which, together with the
amount in the bank, made a true balance at that time.

The witness stated: ''I made an examination of the books. He submitted a little statement book, I should call it a bank book, showing the amount he had in the bank, and I checked that book as true—it was an ordinary deposit book.'' The witness did nothing to verify the amount that was in the bank. He did not know whether or not checks had been drawn against the account that were not shown in the book. He did not know whether the three hundred and three dollars which Hogue had in his possession was obtained by giving a check upon the amount shown by the deposit book to be in the bank, and he made no effort to determine the exact amount that was upon deposit in the bank at the time he audited the account.

Eugene Riley, another of the trustees who assisted in the examination of the accounts, and who was called by defendant as its witness, said that, in determining the amount of money he (Hogue) had on hand, they took the bank book, which was not verified by witness as one of the trustees because the bank was closed. He did not count the money that Hogue produced, but thought that the other trustee did. This testimony in relation to the manner in which the books and accounts were examined and verified, and the funds and property on hand and in the bank, was not disputed, explained or in any way contradicted. The defendant requested the court to instruct the jury to return a verdict for the defendant. This request was denied. The jury returned a verdict for the plaintiff, and defendant moved to set aside the verdict and grant a new trial. This request was denied. In refusing these two requests, the court erred, and, because these errors will necessarily require the reversal of the case, we will not consider the other errors assigned.

We arrive at the conclusion that the court erred in these particulars, for the following reasons: The bond provides, among other things, that the miners' union should notify defendant immediately upon discovering any fraud or dishonesty on the part of an employee. The statement made in the application, to the effect that the accounts of the employee should be examined and verified quarterly, was made for the evident purpose of enabling the guarantor to know what means were to be adopted by the employer to discover fraud or defalcation in the event of its occurrence. It is alleged in the complaint that the shortage of Hogue was not discovered until February 16, more than two months after the quarterly examination of December 10. For aught that appears in the testimony, much of this shortage may have existed at the time of the attempted examination of the accounts. This examination was made by two of the trustees. According to their own testimony, they made no investigation whatever to ascertain the amount of money Hogue actually had in the bank, and, in checking up the funds on hand, merely took the balance shown by Hogue's bank book. It needs no argument to show that, without such an investigation at the bank, there could be no checking up of the funds on hand. For anything which the trustees might have known, the cash which they claimed Hogue had on hand might have been drawn from the bank subsequent to the balancing of the bank book, and, therefore, there was not a compliance with the safeguard which the union had agreed to give to the defendant.

To verify, means to prove to be true or correct, to establish the truth of, to confirm. Nothing of this nature was done or attempted to be done by the trustees, so that there was an absolute breach of the con-

tract made by the union which was the inducement offered defendant for making the bond. The union having failed to do that which it was compelled to do under its agreement, released appellant from all liability under the bond. The trial court should have directed the jury to find for the defendant. Since the representations of the obligee were in response to the obligor's specific inquiries, they were material to the risk, and when the obligee failed to perform that part of the contract, it became, either knowingly or otherwise, a party to the fraud which the bond was given to indemnify them against, and, being a party to the fraud, it cannot call upon the obligor for remuneration. In the bond, it is expressly asserted by the obligor that the answers to these questions were deemed material. As we have seen, they were material to the risk as a matter of fact, and, as a matter of law, the obligor relied upon them and had the right to rely upon them, and presumably the company would not have issued the policy had the obligee not made answers as it did. In any event, whether the bond would have been entered into under other or different circumstances or not, is immaterial. The plaintiff accepted this bond under these conditions and under the agreement to do that which it failed to do, and, as a consequence, could not recover. The foregoing reasoning is based upon the following authorities: *Am. Bonding Co. v. Burke et al.,* 36 Colo. 49; *Carpenter v. Am. Ins. Co.,* 1 Story 57; *Carrollton Furniture Co. v. Am. Cr. Co.,* 124 Fed. 25; *Hoover v. Royal Neighbors,* 65 Kan. 616, and other cases and authorities cited in the foregoing. The judgment of the district court will be reversed.        *Reversed.*

Chief Justice Gabbert and Mr. Justice Goddard concur.