**CITY OF HOUSTON v. QUINONES et al.**

No. 11499.

Court of Civil Appeals of Texas. Galveston.

May 20, 1943.

Rehearing Denied June 10, 1943.

188

Lewis W. Cutrer, Lester Settegast, and Harry Dippel, all of Houston, for appellant.

Verle C. Witham and Robert H. Martin, both of Houston, and George W. Eddy, of Dallas (George W. Eddy, of Dallas, of counsel), for appellees.

CODY, Justice.

This is a suit by a father to recover damages from the City of Houston for the loss of both legs below the knees of his little daughter, caused by a mowing machine which was then being operated by a city employee working for the Street and Bridge Department. The accident occurred on September 4, 1940, at which time the child was three years old. The mowing machine was drawn by a span of mules, and at the time of the accident was being used to cut weeds in the ditches along Ralston Street, which is a shell-topped highway in a sparsely inhabited neighborhood in Houston, and which, at the scene of the accident, abutted on unimproved property thickly covered with weeds.—The suit was filed by the father, both individually and as next friend for his daughter. .

At the conclusion of the evidence, the city urged its motion for an instructed verdict in its favor, which was overruled, and after a verdict in plaintiffs' favor, the city urged its motion for judgment notwithstanding the verdict. The court, however, rendered judgment for plaintiffs upon the verdict in the sum of $27,210. The city has .appealed and here urges the reversal of the judgment upon five principal grounds; 1, because the cutting of weeds was for the promotion of public health and constituted the exercise of a governmental function, whereby the city was not liable for the negligence of its employee; 2, because the notice required to be given the Mayor and city council within ninety days of the accident as a condition precedent to the right to sue by Art. 9, Sec. 11 of the city charter was insufficient, which insufficiency the city did not waive, and has done no act to estop itself from urging such insufficiency; 3, the court erroneously admitted evidence by the mother of statements made by the child after the accident and prior to the trial; 4, jury misconduct in that it received secret evidence from one of its members during its deliberations; and 5, the court in its charge unduly emphasized appellees' theory of the case that the driver of the mower failed to keep a proper lookout.

■ If the cutting of the weeds was the carrying out of the city's regulations to promote the public health, the city would have been exercising a governmental function, and therefore not liable for the negligence of its employee driving the mower. City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872, 876. Appellant contends that the facts of this case bring it within the authority of City of Ft. Worth v. George, Tex.Civ.App., 108 S.W.2d 929, writ refused. In that case an employee of the City of Fort Worth driving a garbage truck which was collecting garbage and refuse inflicted personal injuries for which suit was brought. In an elaborate opinion Justice Speer demonstrated that in collecting garbage the City of Fort Worth was carrying into effect the public health laws of the State, and therefore was exercising its governmental function. In the opinion, the health laws which were being carried into effect were cited. The appellant contends that in operating the mowing machine, by cutting weeds, it was perform-

ing a like public health service that was held to be a governmental function in City of Ft. Worth v. George, supra. The evidence upon which it relies to establish that it was engaged, on the occasion in question, in promoting the public health is that of three highly reputable physicians to the effect that the weeds being cut down were of the kind that gave off pollen which inflicts symptoms of disease, such as hay fever, asthma, and sinus infection; also that the cutting of weeds prevents water from stagnating in empty cans, broken bottles, and the like, where mosquitoes (spreaders of malaria, dengue, etc.) lay their eggs, and there is a valid reason, connected with public health, served by the city ordinance which requires the city health officer to require weeds to be cut down, etc.

Appellant failed to prove, however, that the weeds were being cut upon the occasion in question under orders of the health officer, or as a health measure. In other words, the driver of the mowing machine was working for the Street and Bridge Department of the city, and the cutting of weeds is an incident of cleaning and maintaining the streets. In the City of Wichita Falls v. Phillips, Tex.Civ.App., 87 S.W.2d 544, 546, it was held: "Under the facts recited, we conclude that the work of cleaning the streets was not the performance of a governmental function. * * * but that it was for the benefit of the city and its inhabitants and not for the public at large, and therefore the doctrine of respondeat superior is applicable. City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am.Rep. 517; City of Ft. Worth v. Crawford, 64 Tex. 202, 53 Am. Rep. 753; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S.W. 909; City of Waco v. Branch, 117 Tex. 394, 5 S.W.2d 498, and authorities there cited; 30 Tex.Jur., par. 289, p. 523". See also Houston L. & P. Co. v. Fleming, Tex.Civ.App., 128 S.W.2d 487, reversed on another point. We think that it is clear from the evidence in this case that the cutting of the weeds upon the occasion in question was not solely for the public health, or primarily for the public health, but primarily for the purpose of cleaning the streets.

In City of Ft. Worth v. Wiggins, Tex. Com.App., 5 S.W.2d 761, 764, the court said: "Of course, in a general sense every function of a municipal corporation is in the interest of, and as an agent for, the public, and therefore governmental in its nature. But it is not in this broad sense that the classification exists. * * * We take it to be the true rule, if the act or function involves, in any substantial degree or to any material extent, the serving of its own inhabitants, and therefore private purposes, in respect not undertaken by general law, that liability for negligence exists." In other words, if it can be said that the cutting of the weeds served both the public health and the maintenance of the streets, then the city will be liable for the negligence of its employee engaged in such cutting. See City of Wichita Falls v. Mauldin, Tex.Com.App., 39 S.W.2d 859; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57. In City of Tyler v. Ingram, 139 Tex. 600, 164 S.W.2d 516, 519, it is said: "A municipal corporation is not liable for the negligence of its agents and employees in the *performance of purely governmental matters solely for the public benefit.*" (Emphasis ours.) We therefore overrule appellant's point that it was shown to have been in the exercise of a governmental function on the occasion in question, and therefore could not be held liable for the negligence of its employee.

We next discuss appellant's points dealing with the contention that the notice of the injury given to the Mayor and city council was insufficient under the requirements of Art. 9, Section 11, of the charter of the City of Houston. Said section provides, among other things, as a condition precedent to liability by the city for damages for injuries to property or persons, that the one sustaining such damages or some one on his behalf "shall give the Mayor and City Council notice in writing of such injury * * *, duly verified, within ninety days after same has been sustained," etc. It is appellant's contention that "duly verified" as here used means *verified by affidavit.* There seem to be some cases from other states which lend some support to appellant's contentions. In the present case the notice was in writing and executed by the parents of the child, and acknowledged before a notary public in statutory form, and presented to the council a few days after the accident. The council referred such claim to the city attorney, and before the expiration of ninety days from the date of the accident, the claim was investigated and the city council advised that from such investigation the city attorney's office was of the

opinion that the driver of the mowing machine was not guilty of negligence and that the claim should therefore be refused, and the city council acting on such advice refused the claim.

 Whether or not the execution of the notice by the child's parents, and their acknowledgment before a notary public that they executed the same for the purposes and considerations therein expressed "duly verified" the notice, as such words are used in the requirement, depends upon the meaning of the word "verify". The rule that words must be taken in their ordinary sense, unless a technical sense is clearly indicated, is founded on common fairness. The following meanings of "verify" are given by Webster: (1) "To prove to be true; to establish the truth of; to confirm, as by comparison with facts; to substantiate by reasoning, as to verify an account * * *." (2) "To confirm the truth or truthfulness of; to check or test the accuracy or exactness of". (3) "To confirm or establish the authenticity of, as by examination of competent evidence; to authenticate; prove—specific, 'Law, to confirm or substantiate by oath or proof; to add the verification to (a pleading or petition)'". Now if we eliminate the technical meaning of the word "verify", as used and understood among lawyers, from consideration we find the remaining appropriate meaning is to authenticate. An acknowledgment of an instrument before a notary public proves or verifies it for record. And generally speaking, the same officers officiate when an affidavit is made as when an acknowledgment is taken. The words "duly verify" are broad enough in meaning to embrace both verification by an acknowledgment or verification by affidavit. Apparently the then city attorney, as well as the child's parents, so construed the words. We hold that the notice was duly verified. In view of such holding, it is unnecessary to discuss waiver or estoppel by the city of the sufficiency of the verification.

The injured child was placed upon the stand by appellees to testify. At the time of the trial she was not yet five years old. Her native language is Spanish, though she was examined in English. She proved to be not competent to testify. Thereafter, in the absence of the jury, the child's mother was placed upon the stand and she testified in substance that she reached the scene of the accident shortly after the accident occurred, which was about 9 o'clock in the morning, and she further testified that she and her husband accompanied the child to the hospital, that on the way to the hospital the child asked her mother and father not to cry, that when they arrived at the hospital the child was taken at once to the Emergency room, that afterwards, being some three or four hours after the accident, the child told her, in response to questions, that she had been going to Nana's, going on the street when she saw the horses and moved off into the weeds; the mother further testified that sometime in the nights the child would scream and talk to her about the horses, and that this was the story still told her by her daughter, and that the child had always told her the same story about it from the first.—Appellant's attorney (still in the absence of the jury) at the conclusion of the mother's testimony objected to the admission of the evidence on the ground that the statements of the child were made too remote from the place of the accident and too remote in point of time from the accident to constitute res gestae; and further objected that the child was shown to be incompetent to testify at the time of the trial because of her age, and that she was not less incompetent to testify two years earlier at the time the statements were made to her mother, and that such statements were therefore incompetent evidence; appellant further objected that the evidence was not spontaneous but given in response to questions, and was not res gestae; that it was inflammatory.

 The court then recalled the jury, after having stated that appellant could have its objections and exceptions made to testimony in the jury's absence, and had the court reporter read the mother's testimony to the jury.—We think no useful purpose would be served to add anything to what has already been written on res gestae. The fact that the statements of the child were made at the hospital and not at the place of accident, and made some hours after the accident, does not, under the facts of this case, prevent the statements from being res gestae. Neither does the fact that they were made in response to questions from the mother. The child was then weak and had been given opiates to alleviate her pain. There was less likelihood of fabrication by a

child of three years of age than in case of an adult under the same circumstances, and in similar cases when adults were involved it has been held that statements made even the following day were res gestae. Furthermore, the mere fact that the child was incompetent to qualify as a witness at the time she made such statements does not render her statements inadmissible as res gestae, as part and parcel of the act itself. Croomes v. State, 40 Tex.Cr.R. 672, 51 S.W. 924; Kenney v. State, Tex.Cr.App., 79 S.W. 817, 65 L.R.A. 316.

▪ That part of the mother's testimony in which she undertook to tell that the child would wake up at night and talk about the horses coming at her, and that she still continued to tell the same story is certainly not res gestae. But, due no doubt to the way the testimony was taken in the absence of the jury, and prior to the reading of the mother's testimony to the jury, appellant has the same objections leveled against all of the evidence, some of which is clearly admissible. We have no authority to re-frame such objections. The mother's testimony was given as an entirety and the objection was made as an entirety. The objection, since part of the evidence was admissible, is equivalent to no objection, as we are not authorized to break it up and apply what is good to the part of the evidence which was vulnerable to objection. No doubt, if the objection against the mother's statement that the child continued always to tell the same story had been presented to the court separately, the court would not have admitted such statement. We overrule the points relating to the admission of the mother's testimony.

▪ In its motion for new trial, appellant charged that the jury was guilty of misconduct, in that one of the jurors stated in the jury room, during the deliberation upon the issues and while the jury was considering the issue on whether the driver of the mower kept a proper lookout, that he, said juror, had operated such a mower and knew from his experience that the seat was in such a position that the driver could have seen the child in the weeds if he had kept a proper lookout; and appellant charged that such evidence influenced the verdict. Upon the trial of the question of jury misconduct, when the motion for a new trial was presented, there were ten of the jurors present. Of the ten jurors present, six of them testified substantially that such statements charged in the motion were so made by a juror, and no juror testified that such statement was not made. Such evidence was clearly jury misconduct. The juror who made the complained-of statement thereby in effect testified that he was qualified to testify on the point of whether the driver kept a proper lookout, and that he did not do so. The trial was after the new Texas Rules of Civil Procedure became effective, and Rule No. 327 rules the point. Under that rule, appellant has the burden of showing not only that material jury misconduct occurred, but must also show such misconduct probably resulted in injury to him. When misconduct is established, as it was in this case, the question of injury is one of law for the reviewing court. Barrington v. Duncan, Tex.Sup., 169 S.W.2d 462. And this question of injury must be determined from the entire record, including the evidence heard upon the motion presenting misconduct. Id. While the jurors who testified to hearing the statement of aforesaid juror testified in effect that the statement did not affect their verdict, such character of evidence is without any force. Sproles Motor Freight Lines v. Long, Tex.Sup., 168 S.W.2d 642, 643. We have, therefore, not considered their evidence to such effect as having any force. However, we find there was ample evidence adduced in open court to sustain the jury's finding that the driver of the mower did not keep a proper lookout; though there was likewise ample evidence to have sustained the verdict had it been the other way. We have concluded that, though there is a reasonable doubt whether the misconduct resulted in injury to appellant, we cannot hold that injury probably resulted therefrom to appellant. We therefore overrule appellant's point based thereon.

We have considered the final point urged by appellant and consider that it is without merit.

The judgment of the trial court is affirmed.

Affirmed.