In the Matter of the Application of CHARLES P. SULLIVAN, as District Attorney of Queens County, for the Transfer of ANTOINETTE ALESI, a Dangerously Mentally Ill Inmate of Creedmoor State Hospital, to Matteawan State Hospital. HENDERSON MORRISON, JR., Attorney for Antoinette Alesi, et al., Respondents; COMPTROLLER OF THE CITY OF NEW YORK et al., Appellants.

Argued January 6, 1948; decided March 11, 1948.

Charles E. Murphy, Corporation Counsel (David M. Fuchs and Seymour B. Quel of counsel), for appellants. I. The comptroller and not the court has the power and duty to fix fees and costs which are paid by the City of New York for services rendered in a proceeding under section 85 of the Mental Hygiene Law. (Matter of Smedley v. Taylor, 245 App. Div. 763, 269 N. Y. 585; O'Neill v. State of New York, 223 N. Y. 40; New York Catholic Protectory v. Rockland County, 212 N. Y. 311; People ex rel. Rand v. Craig, 231 N. Y. 216; People ex rel. Grannis v. Roberts, 163 N. Y. 70; People ex rel. Myers v. Barnes, 114 N. Y. 317; People ex rel. Desiderio v. Conolly, 238 N. Y. 326.) II. There was no authority for the Supreme Court to appoint an attorney for an incompetent in a proceeding under section 85 of the Mental Hygiene Law and to order the City of New York to pay compensation to such attorney. (Persky v. Bank of America Nat. Assn., 261 N. Y. 212; Matter of Naylor, 284 N. Y. 188; People ex rel. Ransom v. Niagara County, 78 N. Y. 622; People ex rel. Whedon v. Board of Supervisors, 192 App. Div. 705; People v. Thompson, 205 App. Div. 581; Johnson v. Whiteside County, 110 Ill. 22.)

*Charles P. Sullivan*, District Attorney (*Henry W. Schober* of counsel), for respondents. I. Subdivision 6 of section 85 of the Mental Hygiene Law authorized the order made at Special Term. (*Matter of Smedley* v. *Taylor*, 245 App. Div. 763, 269 N. Y. 585; *Matter of Robertson* v. *Hoban*, 248 App. Div. 262.) II. The assignment of counsel by Special Term is authorized. Proper provision was contained in the order for the payment of a reasonable sum for counsel fees. (*People ex rel. Acritelli* v. *Grout*, 87 App. Div. 193.)

CONWAY, J. In February, 1946, the representatives of the Creedmoor State Hospital, pursuant to subdivision 1 of section 85 of the Mental Hygiene Law, certified to the District Attorney of Queens County that one Antoinette Alesi had committed acts, which, if committed by a sane person, would constitute homicide or felonious assault and that her continued presence was a constant source of danger to other patients and to the personnel of the hospital. Thereupon, under subdivision 2 of section 85, the District Attorney made application to the Supreme Court in Queens County for the appointment of a commission to determine her " dangerous mental illness ". Three disinterested persons were appointed to examine the patient and report thereon. The court further, in the interests of the patient, assigned counsel to represent her. After a hearing and the taking of testimony, the commission recommended that Mrs. Alesi be transferred to Matteawan State Hospital and its report was duly confirmed. On the motion for confirmation the District Attorney requested the court to fix and allow the fees and other expenses of the commission. The court allowed a fee to each of the commissioners, a small sum as out-of-pocket disbursements, and a fee to the attorney assigned to represent the patient. It was further ordered that " such fees, expenses and costs be audited and allowed by the Comptroller of the City of New York, and be paid by the City Treasurer of the said City, on warrant of the said Comptroller," from the court fund and charged to the proper county within the said city.

It is that direction which poses the question presented for our consideration. It is whether the court or the comptroller shall fix and determine the costs of the proceeding within the meaning of subdivision 6 of section 85. That subdivision reads as

follows: " 6. The costs necessarily incurred, under this section, in determining the dangerous mental illness of such person, including fees of the commission, fees of the medical witnesses, and any other necessary expenses allowed by the judge or justice, shall be a charge upon the county from which such person was originally certified; but in the city of New York, the judge or justice shall order such costs audited and allowed by the comptroller and paid by the chamberlain [now the City Treasurer] of said city on the warrant of the comptroller from the court fund, and charged to the proper county within the said city." Concededly, outside the city of New York the judge or justice allows the costs of the proceeding and they thereupon become a charge upon the county from which the patient was originally certified. It is urged by the comptroller that in the city of New York he has the sole power to fix such costs, and that the second portion of subdivision 6 of section 85 grants to him alone, in matters arising in the city of New York, the power granted to judges and justices in other parts of the State by the first portion of the subdivision. That would place upon judges and justices in the city of New York the responsibility for the appointment of the commission, to examine the patient and report to the court, together with the responsibility for confirming the report and acting upon it, but would confer the power to allow compensation for the work performed upon an official unconnected with the court. Certainly, the Legislature has not expressly so provided and there should be clear expression of legislative intent to warrant a holding that it was intended to withhold from courts *in the city of New York only* the power to allow the costs of a proceeding in which it is their duty to select competent disinterested persons to make a determination of dangerous mental illness. Such intent is not evident here.

The word " audit " may connote different processes depending upon the context of the statute, the charge involved and the purpose to be served. A good statement of the rule may be found in 7 Corpus Juris Secundum, pages 1274–1275, which is in part as follows: " It has been said that the true meaning of the word in a particular case is to be ascertained from the context, all surrounding facts, and the purpose to be accomplished,

that sometimes it is restricted in meaning to a check-up of the correctness of the account or claim and excludes any element of discretion on the part of the auditor; that, at other times, it may embrace not only an examination of accounts and a comparison of charges with vouchers, but also an allowance or rejection of charges and a statement of balance for the purpose of determining the amount, if any, to be paid thereon, involving an exercise of discretion by the auditing officer or board; * * *."

We think the duty of the comptroller under subdivision 6 of section 85 is to examine the liquidated charge to see that it is being paid to the proper person, that it was duly fixed and ordered to be paid and that it is entered and charged against the appropriate court fund of the proper county within the city of New York. We think it clear that when the Legislature withheld the right to fix and allow the costs of the proceeding from boards of supervisors in all the other counties of the State, it withheld it from the comptroller in the city of New York, which contains within its boundaries five counties. One of the duties of the comptroller is to act as bookkeeper for the people of those counties and that explains and gives full meaning to all the wording of the latter portion of subdivision 6 of section 85.

This is not the type of case where the charge is mandatory but the amount is subject to review by county or other appropriate officials. (See *People ex rel. Gardenier* v. *Board of Supervisors*, 134 N. Y. 1, 10; *People ex rel. Rand* v. *Craig*, 231 N. Y. 216; *People ex rel. Manley* v. *Craig*, 231 N. Y. 574; *People ex rel. Smyth* v. *Craig*, 231 N. Y. 575.) Here the Legislature has specifically provided that a third party — the " judge or justice " — shall act in the premises before the matter reaches the county authorities or the comptroller. That divests such officials of their ordinary discretion and distinguishes the instant case from those just cited.

There remains the question whether the court had power to allow compensation to the attorney assigned by it to represent the patient. There are many instances in which courts exercise their inherent power to protect individual members of the community by assigning counsel for that purpose in criminal or quasi-criminal cases. Unless the Legislature has provided for

compensation for such counsel, the court is without power to direct payment by the State or county for the services rendered. Thus, payment to counsel is permitted where the charge is murder in the first degree. (Code Crim. Pro., § 308.) There is no such provision when other crimes are charged. Moreover, under subdivision 6 of section 85, the Legislature made express provision for payment for two types of services — service as commissioner and service as a medical witness. If the Legislature had intended that payment should be made for the services of counsel we think such provision would have been made, for the Legislature had the appearance of counsel in mind when it provided that the patient might " be represented by counsel ". (Mental Hygiene Law, § 85, subd. 3.) It must be remembered that before subdivision 6 was added to the section, even the commissioners were not entitled to compensation. (*Matter of Smedley* v. *Taylor,* 269 N. Y. 585; see, also, *Matter of Naylor,* 284 N. Y. 188.)

The orders should be modified by striking out the decretal paragraph providing for the payment to the counsel appointed by the court to represent the interests of Antoinette Alesi of a fee and allowance for services rendered, and as so modified affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and FULD, JJ., concur.

Ordered accordingly.