ATLANTIC CITY TRANSPORTATION CO., APPELLANT, v. DIRECTOR, DIVISION OF TAXATION, RESPONDENT.

Argued February 16, 1953—Decided March 9, 1953.

132

*Mr. J. Dress Pannell,* of the Pennsylvania Bar, argued the cause for the appellant (*Mr. Thomas H. Munyan,* attorney).

*Mr. Murray Fredericks* argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey, attorney; *Mr. Joseph A. Murphy,* Assistant Deputy Attorney-General; *Mr. Benjamin M. Taub,* Deputy Attorney-General).

The opinion of the court was delivered by

BURLING, J. Five appeals were taken by the Atlantic City Transportation Company (hereinafter referred to as the Company) from the assessment and apportionment of excise taxes. The appeals were consolidated for hearing in the Division of Tax Appeals in the State Department of Taxation and Finance. Five separate judgments were filed there. The Company appealed from each judgment to the Superior Court, Appellate Division, where by order entered upon the Company's petition the five appeals were consolidated with the consent of all respondents. Prior to hearing

of the consolidated appeals before the Superior Court, Appellate Division, certification was allowed by this court upon our own motion.

There are two types of tax involved in these appeals. The taxing statute involved is designed to enact a "use" tax, *i. e.,* a franchise tax for the use of public streets, *etc.,* and in addition is designed as a classification statute enabling the State to place in one category utility corporations which use in their operations any part of a public place (as defined in the act), in order to simplify taxation; it provides for franchise and gross receipts taxes *in lieu of all other taxes* and thus renders unnecessary separate classification and taxation of a subject corporation's franchise or franchises and real and personal property. This purpose is clearly expressed in *L.* 1940, *c. 5, sec.* 1 (subsequently amended by *L.* 1952, *c.* 264, *sec.* 2, see *N. J. S. A.* 54:31–45). It provides for a franchise tax for actual use of public places, and a gross receipts tax in lieu of all other property and franchise taxes. Involved in these consolidated appeals are a gross receipts tax for 1948 levied under the provisions of *L.* 1940, *c. 5, sec.* 6, and franchise and gross receipts taxes for 1949 and 1950 levied under *L.* 1940, *c. 5, sec.* 6, as amended by *L.* 1948, *c.* 217, *sec.* 1. The differences between the section as originally enacted and the section as amended in 1948 have no bearing upon the questions involved in these appeals.

We quote from the statute as amended merely to describe the issues at hand. The pertinent portions of *L.* 1940, *c. 5, sec.* 6, as amended by *L.* 1948, *c.* 217, *sec.* 1, *supra,* read as follows:

"6. Every street railway, traction, gas and electric light, heat and power corporation using or occupying the public streets, highways, roads or other public places in this State shall in the year one thousand nine hundred and forty-eight and annually thereafter pay excise taxes for the privilege of exercising its franchises and using the public streets, highways, roads or other public places in this State, as follows:

(a) A tax computed at the rate of five per centum (5%) of such proportion of the gross receipts of such taxpayer for the preceding calendar year as the length of the lines or mains in this State,

located along, in or over any public street, highway, road or other public place, exclusive of service, connections, bears to the whole length of its lines or mains, exclusive of service connections. In case the gross receipts of any such taxpayer for any calendar year shall not exceed fifty thousand dollars ($50,000.00) the tax on such taxpayer for such calendar year shall be computed at the rate of two per centum (2%) instead of at the rate of five per centum (5%).

(b) A tax at the average rate of taxation in this State as computed under the provisions of subsection (c) of this section upon the gross receipts of such taxpayer for the preceding calendar year from its business over, on, in, through or from its lines or mains in the State of New Jersey."

(It is noted that the foregoing section of the statute was further amended by L. 1952, c. 264, sec. 4, see N. J. S. A. 54:31–50, effective subsequent to the periods of time of assessment involved in the present appeals.)

For convenience with respect to the consideration of the taxes levied and the respective appeals therefrom with which we are here concerned, we refer to a tax computed under subsection (a) of the foregoing provision as a "franchise tax" and to a tax computed under subsection (b) of the foregoing provision as a "gross receipts tax." In the light of these prefatory remarks the course of the various appeals to the Division of Tax Appeals is as follows:

On September 12, 1948 the Company appealed the gross receipts tax assessed against it for 1948 (the franchise tax for that year was not appealed); on April 29, 1949 it appealed the franchise tax assessed against it for 1949; on July 22, 1949 it appealed the gross receipts tax assessed against it for 1949; on May 11, 1950 it appealed the franchise tax assessed against it for 1950; and on August 8, 1950, it appealed the gross receipts tax assessed against it for 1950. Each of these five appeals, respectively, at various times was listed for hearing before the entire Division of Tax Appeals, but hearing was adjourned without date. All five were ultimately listed for hearing before the entire Division on October 17, 1950, adjourned again and finally brought on for hearing on April 25, 1951. As hereinabove noted, when the hearings began before the entire Division of

Tax Appeals on this date all five appeals were consolidated for the purposes of hearing and consideration by that tribunal.

At the April 25, 26 and 27, 1951, hearings all seven members of the Division of Tax Appeals were present; at subsequent hearings held June 5, 6, 7, 18, 19 and 22, 1951, the entire membership of the division did not sit, but at each hearing at least four of the members sat. On May 27, 1952, the division met for the purpose of "consideration" of the five (consolidated) appeals. Commissioner Frankenbach was not present; Commissioner Labrecque did not participate in the deliberations. The other five members were present and voted to dismiss the appeals, four members voting to adopt a report filed by Commissioner DeVoe and the fifth member, Commissioner Kreamer, voting to dismiss the appeals but reserving the right to file concurring "reasons." His concurring statement of reasons was filed June 24, 1952.

A separate judgment in writing was prepared with respect to each of the five appeals. Each of these judgments, dismissing the respective appeal and affirming the levy of tax as made by the Director of the Division of Taxation was signed by President Rogers and Commissioners Kreamer, DeVoe and Wiener. The judgments were dated July 31, 1952, and were filed on the same date.

The Company's notice of appeal from each of the five judgments of the Division of Tax Appeals to the Superior Court, Appellate Division, was served upon the Attorney-General of New Jersey, the Cities of Atlantic City, Linwood, Ventnor, Somers Point, Margate, Northfield, Ocean City, Pleasantville, the Borough of Longport, and the Division of Tax Appeals. Each notice of appeal was filed September 12, 1952. On October 9, 1952, the Company addressed a petition to the Superior Court, Appellate Division, to consolidate the five appeals. An order of consolidation, consented to by the Attorney-General of New Jersey, the respective solicitors for the cities of Atlantic City, Linwood, Ventnor, Somers Point, Margate, Northfield, Ocean City, Pleasantville and the Borough of Longport, was entered October 17, 1952. As herein-

before noted, the consolidated appeals were certified on our own motion prior to hearing before the Appellate Division.

Before proceeding to outline the questions involved and to express our determination thereof, it is deemed advisable to relate that at the hearing on June 6, 1951 the Division of Tax Appeals ruled that although the statute required notice to all the municipalities entitled to a portion of any of the taxes involved in the appeals to the division, and therefore they properly had been given notice of the five appeals herein, the municipalities themselves had not appealed and therefore had no right affirmatively to assert any alleged deficiency in the assessments. The City of Ventnor City opposed this ruling and was accorded an exception, but neither Ventnor nor any other municipality appears to have appealed therefrom. The City of Atlantic City has appeared before this court as a respondent, being directly interested in the principal questions involved, hereinafter to be detailed. The other municipalities, although constituted respondents herein, have filed no briefs and have presented no argument here.

The questions involved in these consolidated appeals may be summarized as follows: (a) Is each judgment of the Division of Tax Appeals fatally defective upon the ground that the division failed to reduce to writing findings of facts as required by the pertinent statutory provisions? (b) Did the Director of the Division of Taxation without statutory authority materially alter the Company's excise tax returns for the years 1948, 1949 and 1950? (c) Is the decision of the Superior Court, Appellate Division, in *Atlantic City Transportation Company v. Walsh*, 6 *N. J. Super.* 262 (*App. Div.* 1950), determining the Company's 1947 franchise and gross receipts tax appeals, *res adjudicata* as to the question whether that portion of the Company's electric trolley lines which pass down Atlantic Avenue in the City of Atlantic City for a distance of 3.043 miles is in a "public street" or other "public place" within the meaning of *L.* 1940, *c.* 5, and the amendments thereto? (d) If the said decision of the Superior Court, Appellate Division, concerning the 1947 tax appeals of the Company is not *res adjudicata*, is the 3.043-

mile portion of the Company's electric trolley lines passing down Atlantic Avenue in the City of Atlantic City use or occupation of a public street, highway, road or other public place within the purview of *L.* 1940, *c.* 5, and amendments thereto, *supra*? (e) In computation of the gross receipts tax was inclusion of gross receipts of a street railway corporation from the whole of its lines in the State of New Jersey "where operations on such lines as were upon public streets were permanently abandoned, after less than a month of reported year" (*viz.* 1948) unreasonable, illegal and confiscatory?

## (a) FINDINGS OF FACT

As has been the case in several appeals from state administrative agencies, one of the questions involved in these consolidated appeals is whether the five judgments of the Division of Tax Appeals adjectively are fatally defective. The defect asserted by the Company to exist is that the Division of Tax Appeals failed to reduce to writing findings of facts supporting the respective judgments. It is settled in this state that "The requirement of findings is far from a technicality and is a matter of substance" and "A conclusion requires evidence to support it and findings of appropriate definiteness to express it," in order to "enable the reviewing court to intelligently review an administrative decision and ascertain if the facts upon which the order is based afford a reasonable basis for such order." *N. J. Bell Tel. Co. v. Communications Workers, etc.,* 5 *N. J.* 354, 375, 377 (1950). We have held that these principles are applicable to tax appeals. *D., L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 424–427 (1952). The respondent contends that the Division of Tax Appeals complied with the applicable statutory provisions in this respect by adopting Commissioner DeVoe's "report and recommendation," which as hereinbefore noted was submitted to the division, and adopted thereby, at the meeting of May 27, 1952. The Company contends that the DeVoe report was comparable to the report of the "Railroad Panel" of the Division of Tax Appeals in

the Class II railroad property tax case of *D., L. & W. R. Co. v. City of Hoboken, supra* (see 10 *N. J.*, at *p.* 427), considered insufficient by this court for the reason that the report was a mere "summary of the evidence" and "index" to the record.

The pertinent statutory provisions are: *R. S.* 54:2–10, which provides that a majority of the members of the Division of Tax Appeals (composed of seven members, see *R. S.* 54:2–3, as amended *L.* 1946, *c.* 161, *p.* 724, *sec.* 1, *N. J. S. A.* 54:2–3) shall constitute a quorum for the transaction of business and that a vacancy shall not impair the powers nor affect the duties of the board or of the remaining members; *R. S.* 54:2–14, as amended *L.* 1946, *c.* 161, *p.* 724, *sec.* 3, *N. J. S. A.* 54:2–14, which provides that the division's "final determination of such appeals * * * shall be evidenced by judgment signed by at least four members, and filed with its secretary" (the record shows that each of the five judgments under review was signed by four members of the division and filed with the secretary of the division); *R. S.* 54:2–16, as amended *L.* 1941, *c.* 143, *p.* 485, *sec.* 1, *N. J. S. A.* 54:2–16, which provides: "The board shall reduce to writing its findings of fact and its decision in each case."

The Company's appeal in this case asserts noncompliance with *R. S.* 54:2–16, as amended, *supra.* It is clear from the record that the hearings of the consolidated appeals were conducted before the Division of Tax Appeals as such, and were not referred to two or more members of the Division for hearing and report to the entire division under *R. S.* 54:2–18, as amended *L.* 1941, *c.* 143, *p.* 485, *sec.* 2, and *L.* 1946, *c.* 161, *p.* 725, *sec.* 4, as in the *D., L. & W. R. Co.* case, *supra.* Commissioner DeVoe's report in the present matter was submitted as a member of the entire division, and it was formally adopted by a majority of the division. The report was in writing and inasmuch as the statute fails to prescribe the method by which the division shall effect compliance with the statutory mandate to "reduce to writing its findings of fact and its decision," formal adoption of written findings prepared and submitted by a member of the division under

the circumstances of this case. is sufficient compliance with the statute, provided the report contains adequate "findings of fact" and "decision in each case." The appeals before the division were consolidated for hearing and included practically identical questions of fact and law, the statutory requirement of written "findings" and "decision in each case" appears to be satisfied in this case by a single writing adequately covering the five consolidated appeals.

■ Commissioner DeVoe's report in the present case contained findings of fact and "decision" (conclusions as to the Company's asserted reasons for appeal) with reference to each of the five appeals and was therefore adequate from an adjective standpoint for the Division of Tax Appeals to rest its judgment thereon in each of the five appeals. It is sufficient, especially under the circumstances of this case where the questions are of law and not of matters in which specialized experience exists in or is deemed peculiar to the members of the administrative body, for review by an appellate court under the principles hereinbefore adverted to and to invoke the appellate court's duty "to review the evidence and render such decision as it deems proper in the light of that evidence but not to disturb the judgment of the Division of Tax Appeals unless the evidence is persuasive that the administrative tribunal erred." *Aetna Life Insurance Co. v. City of Newark*, 10 *N. J.* 99, 104 (1952).

### (b) ALTERATION OF EXCISE TAX REPORTS

■ The second question presented by the Company is whether the Director of the Division of Taxation without statutory authority materially altered the Company's excise tax returns for the years 1948, 1949 and 1950.

The applicable statutory provision is contained in *L.* 1940, *c. 5, sec. 7, par. (D)*, as amended by *L.* 1941, *c. 21, sec. 3, N. J. S. A.* 54:31–51(*D*), which reads:

"(D) The State Tax Commissioner shall audit and verify the statements filed by taxpayers whenever and in such respects as he shall deem necessary or advisable. The State Tax Commissioner

may require any taxpayer to supply additional data and information in such form and detail as he shall request, whenever he may deem it necessary or helpful, for the proper performance of his duties under this act."

The word "audit" is not one of easy or uniform definition. A recent and pertinent definition appears in *Application of Sullivan*, 297 *N. Y.* 190, 78 *N. E.* 2d 467, 469 (*Ct. App.* 1948) as follows:

"The word 'audit' may connote different processes depending upon the context of the statute, the charge involved and the purpose to be served. A good statement of the rule may be found in 7 *Corpus Juris Secundum, Audit, pages* 1274, 1275, which is in part as follows: 'It has been said that the true meaning of the word in a particular case is to be ascertained from the context, all surrounding facts, and the purpose to be accomplished, that sometimes it is restricted in meaning to a check-up of the correctness of the account or claim and excludes any element of discretion on the part of the auditor; that at other times, *it may embrace not only an examination of accounts and a comparison of charges with vouchers, but also an allowance or rejection of charges and a statement of balance for the purpose of determining the amount, if any, to be paid thereon, involving an exercise of discretion by the auditing officer or board;* * * *" (Emphasis supplied.)

See numerous other references digested and collected in 4 *Words & Phrases* (*Perm. ed.* 1940), *pp.* 810 *et seq.*

The word "verify" also has several meanings, a pertinent one is: to prove to be true or correct; to establish the truth of; to confirm. *United States Fidelity & Guaranty Co. v. Downey*, 38 *Colo.* 414, 88 *P.* 451, 452, 10 *L. R. A., N. S.,* 323, 120 *Am. St. Rep.* 128 (*Sup. Ct.* 1907); *cf. City of Houston v. Quinones*, 172 *S. W.* 2d 187, 190 (*Tex. Civ. App.* 1943); *National Surety Corporation v. Lybrand*, 256 *App. Div.* 226, 9 *N. Y. S.* 2d 554, 561 (*App. Div.* 1939); *MacNeill v. Maddox*, 194 *Ga.* 802, 22 *S. E.* 2d 653, 654 (*Sup. Ct.* 1942). See also 44 *Words & Phrases* (*Perm. ed.* 1940), *pp.* 138 *et seq.*

The alleged "alterations" in the excise tax reports of the Company appear to be mere notations thereon of the director's conclusions. Under the language of *L.* 1941, *c.* 5, *sec.* 7,

par. (*D*), *supra*, the director is authorized to make the same. Otherwise the duty placed on him to "audit and verify" statements or such reports "whenever and in such respects as he shall deem necessary" and in that connection to require a taxpayer to supply such additional data as he may request, is without meaning. The Company's argument is without merit.

## (c) RES ADJUDICATA

The third question involved is the Company's contention that the substantive matters involved in these consolidated appeals were litigated and determined adversely to the respondent (on appeals from assessments of franchise tax and gross receipts tax for the year 1947) in the Superior Court, Appellate Division, in *Atlantic City Transportation Company v. Walsh, supra* (6 *N. J. Super.* 262), from which no appeal was taken and are therefore *res adjudicata*. The respondent argues that the judgment of the Appellate Division on the 1947 tax appeals is not *res adjudicata*. The respondent's principal argument is that the decision is not *res adjudicata* as to the 1948, 1949 and 1950 tax appeals because it was based upon a stipulation, and therefore the facts, in issue here, were not litigated.

The record of the appeal to the Appellate Division in the 1947 tax cases was considered by the Division of Tax Appeals in the five appeals now under review, the Company's case being presented to it upon this theory of *res adjudicata* coupled with proofs as to operations of the Company and as to the alleged continuity of title to the bed of Atlantic Avenue in the City of Atlantic City since May 1, 1948. The complete record of the 1947 appeals was not formally received in evidence (although portions thereof were so received), but had been offered by the Company and subsequently with respondent's consent was "judicially noticed" by the Division of Tax Appeals. Neither party asserts error in regard to this procedure.

In the 1947 proceedings it was stipulated in writing by the Company and the respondent, *inter alia*, as follows:

"In the case of the Atlantic Avenue Division, the Atlantic City Transportation Company is the owner of the track and roadbed of a width of 24 feet 3 inches, beginning at a point at or near the car barn in the Inlet, at Atlantic City, and extending through Atlantic City, Ventnor City, Margate City and the Borough of Longport. In addition to the tracks and ties, the overhead wires and supporting poles are located upon this roadbed.

\* \* \* \* \* \* \* \*

Prior to its acquisition by the Atlantic City Transportation Company up to and including the year 1945 assessment was levied upon the Right of Way as first class railroad property owned by the West Jersey and Seashore Railroad Company and taxes thereon paid.

The original plan or map of dedication of the City of Atlantic City was filed April 15, 1853, under which plan or deed of dedication, the City was laid out from the Inlet to California Avenue. Prior to that time the Camden and Atlantic Railroad Company owned the 24.3 foot right of way or roadbed from the Inlet to California Avenue and beyond and the dedication of Atlantic Avenue in the original dedication covered only the area on either side of the Right of Way \* \* \*"

The portions of the stipulation above adverted to relate to the principal question of substance in this case, namely, whether or not the Company's use of its tracks and equipment in Atlantic Avenue in Atlantic City is use or occupation of a public street or public place within the purview of the taxing statute invoked. The stipulation was expressly limited to "All purposes of *this case*" (emphasis supplied). Thus it was confined solely to the determination of the 1947 tax appeals and not designed to settle for all time the Company's contentions as to the nature of its occupation of the portion of Atlantic Avenue in question.

 That an adjudication of the State's right to levy a tax as to one year is *res adjudicata* as to subsequent years where the matter was fully litigated and involved "identically the same facts" and "precisely the same questions" of law, was determined by the former Court of Errors and Appeals in *Hancock, Comptroller v. Singer Mfg. Co.*, 62 *N. J. L.* 289, 339 (*E. & A.* 1898). And we have held that "where the factual situation and questions presented are the same, the

prior holding of the court in a case of this nature may be controlling." *Aetna Life Insurance Co. v. City of Newark, supra* (10 *N. J.*, at *p.* 104). But here the factual situation is not the same. The stipulation above adverted to was specifically limited to the 1947 tax appeals and the questions of fact and law were not "fully litigated." *Cf.* 50 *C. J. S., Judgments,* § 733, *p.* 224.

■■ Further it has been held that the rights of the public may not be stipulated away by a city attorney (or an attorney-general) "without having been duly authorized by the defendant's governing body to so stipulate." *Dvorin v. Bayonne,* 111 *N. J. Eq.* 52, 57 (*Ch.* 1932). "Collection of taxes is a governmental function in the performance of which a city may not be bound or estopped by unauthorized acts of its officers." *Bayonne v. Murphy & Perrett Co.,* 7 *N. J.* 298, 311 (1951). *Cf. In re Annexation of Certain Territory of City of Salem,* 120 *Ind. App.* 247, 91 *N. E. 2d* 648, 649 (*App. Ct.* 1950); 17 *McQuillin, Municipal Corporations* (*3rd ed.,* 1950), *sec.* 49.33, *pp.* 232, *etc.*

■ We conclude that under the circumstances of this case the decision of the Superior Court, Appellate Division, in *Atlantic City Transportation Company v. Walsh, supra,* is not *res adjudicata* of the questions involved in these consolidated appeals.

(d) Classification Under L. 1940, c. 5, as Amended

The fourth question involved in these appeals is whether the Company's operations on Atlantic Avenue in Atlantic City constitute it a street railway corporation "using or occupying the public streets, highways, roads or other public places" subject to franchise and gross receipts tax under *L.* 1940, *c.* 5, *sec.* 6, and *L.* 1940, *c.* 5, *sec.* 6 as amended *L.* 1948, *c.* 217, *sec.* 1, *supra.*

In 1948, 1949 and 1950 the tax years involved in these appeals the statutory definitions included the following:

"(g) 'Public street, highway, road or other public place' *includes any street, highway, road or other public place which is open and*

used by the public, even though the same has not been formally accepted as a public street, highway, road, or other public place." (Emphasis supplied.) (See L. 1940, c. 5, sec. 2, as amended L. 1941, c. 21, p. 43, sec. 1, N. J. S. A. 54:31–46)

In effect, the Company's claim is that by virtue of the fact (as it alleges) that it does not operate any portion of its lines in a "public street" or "public place" it is exempt from taxation under this statute, L. 1940, c. 5, as amended. Viewed in that respect the Company must carry the burden of proving the facts to support its contention. *Clifton v. State Board of Tax Appeals*, 136 *N. J. L.* 213, 216 (*E. & A.* 1947); *Borough of Edgewater v. Connoil Corp.*, 4 *N. J. Super.* 338, 342 (*App. Div.* 1949). And further, we have held that "The settled rule is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise." *Aetna Life Insurance Co. v. City of Newark, supra,* (10 *N. J.*, at p. 105); *D., L. & W. R. Co. v. City of Hoboken, supra* (10 *N. J.*, at p. 426). The respondent argues that the Division of Tax Appeals correctly determined that the Company had failed to carry the burden of proof. We so determine. The Company introduced no pertinent evidence, and the evidence introduced by the respondent supports the assessment.

There is no evidence in the record to support a claim by the Company that its predecessors in title owned the fee to the Company's roadbed in Atlantic Avenue, for any width (24.3 feet wide or otherwise) prior to the filing of the agreement and map of dedication dated April 15, 1853, filed and recorded in the county clerk's office on May 23, 1854. The evidence shows that this agreement of April 15, 1853 was signed and acknowledged by various parties, including the Camden and Atlantic Land Company, a New Jersey corporation which was incorporated about March 10, 1853 by the principal incorporators of the Camden and Atlantic Railroad Company (a New Jersey corporation chartered March 19, 1852). With the exception of the Land Company which at that time held no legal title to the premises in question,

the grantors in said agreement appear to have been former owners of the fee of the lands covered thereby. They had previously conveyed all their right, title and interest in a substantial portion of the same to one Isaac Waterman, who received the title in trust for the Land Company. Deeds vesting title in Waterman were dated February 10, 1853 and were recorded March 2, 1853. Waterman and his wife by deed dated September 28, 1854, recorded October 2, 1854 in which deed it was recited that Waterman had received title in trust for the Land Company, conveyed the fee to the Land Company. It is apparent from these and other items in the record that the grantors in the April 1853 deed of dedication at the time thereof had previously conveyed a substantial portion of the subject lands to Waterman and therefore could not dedicate any portion thereof to public or railroad use. But the Land Company, the equitable owner, joined in the deed. It has been held in other jurisdictions that an equitable owner may be bound by the dedication under such circumstances. 2 *Thompson on Real Property* (*Perm. ed.,* 1939), *sec.* 484, *p.* 50; *Frye v. King County,* 151 *Wash.* 179, 275 *P.* 547, 62 *A. L. R.* 476, 478 (*Sup. Ct.* 1929). *Annotations,* 62 *A. L. R.* 480 *et seq.*

That the map constituted a dedication and was accepted as such by the City of Atlantic City has been judicially determined. The former Supreme Court in *State, Felix, Pros., v. Atlantic City,* 34 *N. J. L.* 99, 104–105 (*Sup. Ct.* 1869) held:

"December 20th, 1852, a map or plot of Atlantic City was made by the Camden and Atlantic Land Company, and other owners of lands within the boundaries, and by agreement between the parties, dated April 15, 1853, was formally adopted, and a dedication of the streets and alleys thus laid down was made for public use. This map and agreement were recorded in the Clerk's office of Atlantic county, May 23d, 1854.

March 3d, 1854, Atlantic City was incorporated according to the boundaries of said map. In describing these boundaries, Atlantic street is expressly named as one of the streets of said city, and a line run parallel with its course. These facts settle the question of the recognition by municipal authority of the dedication of this street or avenue, concerning which much was said on the argument of the cause.

"The railroad, the land association, and the laying out and incorporating a city for a watering place, were all parts of a scheme directed by the same persons to the same ends. All the acts done in furtherance of these objects were concurrent and consistent. There is no evidence in this cause of exclusive right or ownership in the railroad company to the part of Atlantic avenue in controversy. The dedication of the street to public use antedates the occupation and use by the railroad company at this point. All the circumstances show that there is no conflict of right or authority between the company and the city, and that the owner of the land at that time assented to the use of the street by the public and by the railroad company.

Whatever question there might be as to the right of exclusive use by the railroad company of a public highway by legislative and municipal authority, without the consent of the owner of the fee, or compensation made to him, there can be no question that there may be a concurrent use of a public highway by the consent and license of all the parties in interest.

*Morris & Essex Railroad v. City of Newark*, 2 *Stockt.* 352, *Williams v. New York Central Railroad*, 18 *N. Y.* 97; 1 *Redfield on Railways* 162.

Atlantic avenue is therefore a public street within the terms of the charter; and the common council could require it to be graded, curbed and graveled as such by ordinance."

The evidence in the record of the appeals before us verifies the conclusions expressed in the *Felix* case, *supra*. The Company admits that the Camden and Atlantic Land Company, between October 12, 1854 and May 17, 1877, made 33 conveyances along Atlantic Avenue by descriptions related to a designated map. (The testimony of Mr. Jay C. Kline, a title expert, was that there were "hundreds" of conveyances, but only 33 were introduced in evidence.) It is a legitimate inference to be drawn from the evidence adduced that the map adverted to was that filed May 23, 1854, *ante*. There having been sales of lots of land along Atlantic Avenue upon descriptions reciting "along Atlantic Avenue" or along either "side of Atlantic Avenue," and made with reference to that map, the street was "an existing highway dedicated as such" under the principles laid down in *Salter v. Jonas*, 39 *N. J. L.* 469, 471–474 (*E. & A.* 1877) and *Brill v. Eastern New Jersey Power Co.*, 111 *N. J. L.* 224–225 (*E. & A.* 1933), and the grantees' titles extended to the middle of the street.

The Company in these appeals relies on evidence that was

apparently not before the former Supreme Court in the *Felix* case, *supra*, coupled with the map of dedication above adverted to. The sources of its claims are an agreement entered into by the original land owners with the Camden and Atlantic Railroad Company, dated June 21, 1852, but not recorded until February 7, 1890, and the original survey of the Camden and Atlantic Railroad which was filed on November 9, 1852.

Giving the June 21, 1852 agreement full weight as asserted by the Company, it was no more than an agreement to give consent in the future. And the agreement and map of dedication recorded in May 1854 contained no reservation of any rights in the fee of Atlantic Avenue, although the map shows along the center of Atlantic Avenue a line marked "center line" "railroad." There is clearly no proof that any reservation of the fee was intended and we need not determine the construction of the language ("consent to the laying out of any road and walks") used in the June 21, 1852 agreement, *i. e.*, whether the "consent" to be given thereunder was for railroad purposes or merely for dedication of streets and walks.

The Company, upon the basis of the alleged consent agreement and map of dedication, *ante*, seeks to invoke the doctrine of *Ayres v. Pennsylvania R. R. Co.*, 52 *N. J. L.* 405, 409–412 (*E. & A.* 1890). The *Ayres* case, *supra*, holds that the filing of a railroad survey does not preclude the owners from effecting complete dedication, but also holds that where there is evidence that the dedication was subject to the railroad's right to acquire the title to or the use of a strip of land covered by the dedication the use as a public highway is "subsidiary" and "will not operate on the land so granted until the railroad use is abandoned." In the *Ayres* case, *supra*, the indication of a railroad line in the center of the street was held to be sufficient evidence of the railroad's right subsequently to acquire the use of the strip, as against the public, from the original grantor even where he had conveyed away his title to the fee. In the present case the Company contends that its predecessor in title acquired such

rights by virtue of several deeds executed by original owners of the fee (or their heirs) and by the Camden and Atlantic Land Company, dated in 1875 (but not recorded until 1885). Supporting proofs with respect to title and tracing the Company's (appellant's) ownership or easement right from 1852 to the time of the assessment in this case are not complete and are not demonstrated with exactness.

Further, it is admitted by the Company that the Atlantic City portion of Atlantic Avenue, the only portion in question in this case, has long been paved for its whole width, and in use by the public even where the tracks of the Company are located. Even if the proofs were sufficient to show that the Company or its predecessors acquired the fee to its roadbed in that portion of Atlantic Avenue, or a right to exclusive use of the same paramount to the public right under the *Ayres* case, *supra*, the long continued public user of the whole width of the avenue, of which there is evidence in this case, is in itself proof of abandonment to the public even though the public authorities do not "work" the road. *Dickinson v. D., L. & W. R. R. Co.*, 87 N. J. L. 264, 265-266 (*E. & A.* 1915); *Riverside v. Pennsylvania Railroad Co.*, 74 N. J. L. 476, 479 (*E. & A.* 1907). *Cf. Township of Parsippany-Troy Hills v. Bowman*, 3 N. J. 97, 103–104 (1949).

We are persuaded that upon the whole of the evidence in this case, the peaks of which are hereinabove discussed, the Company has failed to carry the burden of proof of its claims, and that for the purposes of its tax appeals for 1948, 1949 and 1950 the evidence in the record shows that Atlantic Avenue in Atlantic City is a "public street" or "public place," for its entire width along the 3.043 miles in question.

#### (e) Gross Receipts Tax Computations

The fifth question involved is the Company's assertion that the gross receipts taxes were improperly assessed against it because on January 18, 1948 it ceased operation of any portion of its lines on a "public street." In view of our

determination of the principal question, namely, that for the purpose of these tax appeals Atlantic Avenue in Atlantic City has been proved to be a "public street," no consideration of this question is necessary.

For the reasons expressed in this opinion the judgments of the Division of Tax Appeals are affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.