954

No. 5048.   MELTZER ET AL. *v.* C. BUCK LECRAW & CO.
Sup. Ct. Ga.   Certiorari denied.

MR. JUSTICE BLACK.*

On March 2, 1971, this Court decided *Boddie* v. *Connecticut,* 401 U. S. 371, holding that Connecticut could not consistently with the Due Process and Equal Protection Clauses deny access to its divorce courts to indigents unable to pay relatively small filing and service of process fees.[1]   We now have eight other cases pending on appeal or on petition for writ of certiorari in which indigents were denied access to civil courts because of their poverty.

One case, *Sloatman* v. *Gibbons,* No. 5067, is distinguishable from *Boddie* only by the fact that Arizona permits an extension of time for an indigent to pay the statutory fee when filing for a divorce.   *In re Garland,* No. 5971, involves the right of a bankrupt to file a petition for discharge in bankruptcy without payment of the $50 statutory fee.   *Meltzer* v. *LeCraw & Co.,* No. 5048, involves a slightly more subtle form of handicap to the indigent seeking judicial resolution of a dispute. In that case a tenant who fights his eviction by resort to

---

*This opinion also applies to No. 5050, *Frederick et al.* v. *Schwartz et al., supra;* No. 5208, *Beverly* v. *Scotland Urban Enterprises, Inc., supra;* No. 6158, *Lindsey et al.* v. *Normet et al., supra;* No. 5971, *In re Garland et al., infra;* No. 5054, *Bourbeau* v. *Lancaster, infra;* No. 5067, *Sloatman* v. *Gibbons et al., supra;* and No. 6375, *Kaufman* v. *Carter, infra.*

[1] I dissented in *Boddie* v. *Connecticut,* 401 U. S. 371, 389 (1971), but now believe that if the decision in that case is to continue to be the law, it cannot and should not be restricted to persons seeking a divorce.   It is bound to be expanded to all civil cases.   Persons seeking a divorce are no different from other members of society who must resort to the judicial process for resolution of their disputes. Consistent with the Equal Protection Clause of the Constitution, special favors cannot and should not be accorded to divorce litigants.

the judicial process risks the penalty of a judgment for double the rent due during the litigation if he loses. Two other cases, *Frederick* v. *Schwartz,* No. 5050, and *Bourbeau* v. *Lancaster,* No. 5054, involve indigents who have lost civil cases—a welfare claim and child guardianship claim—and who cannot afford to pay the fees for docketing an appeal. *Beverly* v. *Scotland Urban Enterprises, Inc.,* No. 5208, and *Lindsey* v. *Normet,* No. 6158, involve indigents who cannot post the penalty bonds required to appeal from adverse judgments in housing-eviction cases. And finally, *Kaufman* v. *Carter,* No. 6375, is perhaps the most surprising of all eight cases because in that case an indigent mother was denied court-appointed counsel to defend herself against a state civil suit to declare her an unfit mother and take five of her seven children away from her.

The Court has decided to note probable jurisdiction in No. 6158, *Lindsey* v. *Normet.* Review will be denied in five of the other cases—Nos. 5048, 5208, 5054, 5971, and 6375—while the judgments in the two remaining cases are to be vacated and the cases remanded for reconsideration in light of the decision in *Boddie.* I agree with my Brethren that *Lindsey* v. *Normet* should be set for argument, but I cannot understand why that case is singled out for special treatment and why distinctions are made between the other cases. For the reasons set out below, I would grant the petitions or note probable jurisdiction in each of the other cases and set them for argument or reverse them outright on the basis of the decision in *Boddie.*

In my view, the decision in *Boddie* v. *Connecticut* can safely rest on only one crucial foundation—that the civil courts of the United States and each of the States belong to the people of this country and that no person can be denied access to those courts, either for a trial or an appeal, because he cannot pay a fee, finance a

bond, risk a penalty, or afford to hire an attorney. Some may sincerely believe that the decision in *Boddie* was far more limited in scope—that is, applies only to divorce cases. Other people might recognize that this constitutional decision will eventually extend to all civil cases but believe that it can only be enforced slowly step by step, so that the country will have time to absorb its full import. But in my judgment *Boddie* cannot and should not be limited to either its facts or its language, and I believe there can be no doubt that this country can afford to provide court costs and lawyers to Americans who are now barred by their poverty from resort to the law for resolution of their disputes.

The opinion in *Boddie* attempts to draw two distinctions between divorce and other disputes. The Court there stated that access to the judicial process in divorce matters is the "exclusive precondition to the adjustment of a fundamental human relationship." *Supra,* at 383. The two elements, then, that require open access to the courts are that the judicial mechanism be the "exclusive" means of resolving the dispute and that the dispute involve "fundamental" subject matter. The first element—the "exclusiveness" of the judicial process as a remedy—is no limitation at all. The States and the Federal Government hold the ultimate power of enforcement in almost every dispute. Every law student learns in the first semester of law school that property, for instance, is "valuable" only because the State will enforce the collection of rights that attach to its ownership. Thus, the State holds the ultimate remedy in almost every property dispute. Similarly, the wrong that gives rise to a right of damages in tort exists only because society's lawmakers have created a standard of care and a duty to abide by that standard. The alternatives to resort to the judicial process in tort cases are negotiation and settlement, abandonment of recovery, private self-

help, and perhaps insurance. With the exception of insurance, the alternatives are exactly the same as in a divorce case—negotiate a separation agreement, decide to continue the marriage relationship, or violate the law. Likewise, contracts are valuable only because society will enforce them. Indeed, marriage itself when analyzed in purely legal terms is a contract that cannot be revoked without governmental approval.[2] Thus, the judicial process is the exclusive means through which almost any dispute can ultimately be resolved short of brute force.

The other distinction between divorce and different kinds of controversies suggested in the *Boddie* opinion is the degree to which the disputes are regarded as "fundamental." The extent to which this requirement limits the holding of *Boddie* is found in the very facts of that decision—the right to seek a divorce is simply not very "fundamental" in the hierarchy of disputes. Marriage is one of the cornerstones of our civilized society. Society generally places a high value on marriage and a low value on the right to divorce. And since *Boddie* held that the right to a divorce was "fundamental," I can only conclude that almost every other kind of legally

---

[2] By "exclusive precondition" the Court in *Boddie* might have been suggesting that divorce is constitutionally different from all other kinds of disputes because even when the two parties to the marriage agree to end their relationship they still must seek judicial approval. But *Boddie* by its terms is not limited to divorces in which the parties have agreed to terminate their marriage. And the plaintiff in a contested tort case finds resort to the judicial process every bit as necessary as the litigant seeking a contested divorce.

Even if "exclusive precondition" meant that the formality of judicial approval was mandatory, the *Boddie* rationale would go far beyond divorce. Citizens generally must resort to courts for adoptions, to probate a will, to obtain a discharge in bankruptcy, for child custody determinations, to clear title to land *in rem*, to obtain an adjudication of incompetency, to change a name, and for other matters. It would be extremely arbitrary to limit *Boddie* to these particular kinds of disputes.

enforceable right is also fundamental to our society. Society generally *encourages* people to seek recompense when they suffer damages through the fault of others. And I cannot believe that my Brethren would find the rights of a man with both legs cut off by a negligent railroad less "fundamental" than a person's right to seek a divorce. Even the need to be on the welfare rolls or to file for a discharge in bankruptcy seems to me to be more "fundamental" than a person's right to seek a divorce. Society provides welfare to ensure the survival of the unfortunate. And bankruptcy is designed to permit a man to make a new start unhampered by overwhelming debts in hopes of achieving a useful life. For this Court to have first provided for governmental assumption of civil court costs in a divorce case seems to me a most unfortunate point of departure. But since that step has now been taken, I would either overrule *Boddie* at once or extend the benefits of government-paid costs to other civil litigants whose interests are at least as important to an orderly society.

In my judgment, the crucial foundation on which *Boddie* rests also forbids denial of an indigent's right of appeal in civil cases merely because he is too poor to pay appeal costs. Once the right to unhampered access to the judicial process has been established, that right is diluted unless the indigent litigant has an opportunity to assert and obtain review of the errors committed at trial. Since *Boddie* rejected distinctions between the civil and the criminal process in determining the permissibility of restrictions upon access to the courts, we need only apply to civil cases our long line of holdings that indigent criminals cannot because of their indigency be denied an appeal or the right to a state-furnished record on appeal. See *Griffin* v. *Illinois,* 351 U. S. 12 (1956); *Draper* v. *Washington,* 372 U. S. 487 (1963); *Long* v. *District Court of Iowa,* 385 U. S. 192 (1966); *Roberts* v. *LaVallee,* 389

U. S. 40 (1967); *Williams* v. *Oklahoma City,* 395 U. S. 458 (1969). See also *Douglas* v. *California,* 372 U. S. 353 (1963).

Finally, there cannot be meaningful access to the judicial process until every serious litigant is represented by competent counsel. Cf. *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Douglas* v. *California, supra.* Of course, not every litigant would be entitled to appointed counsel no matter how frivolous his claims might be. See *Ellis* v. *United States,* 356 U. S. 674 (1958). But the fundamental importance of legal representation in our system of adversary justice is beyond dispute. Since *Boddie* held that there must be meaningful access to civil courts in divorce cases, I can only conclude that *Boddie* necessitates the appointment of counsel for indigents in such cases. In fact, this Court has held that attorneys' fees are part of the costs of litigation and may be taxed as costs. *Sprague* v. *Ticonic National Bank,* 307 U. S. 161 (1939). And as with fees and transcripts, I will never agree to limit the advantages of free counsel to divorce cases. See n. 1, *supra.* The necessity of state-appointed counsel is particularly acute in cases like one of those before us, *Kaufman* v. *Carter,* where the State initiates a civil proceeding against an individual to deprive her of the custody of her children. Here the State is employing the judicial mechanism it has created to enforce society's will upon an individual and take away her children. The case by its very nature resembles a criminal prosecution. The defendant is charged with conduct—failure to care properly for her children—which may be criminal and which in any event is viewed as reprehensible and morally wrong by a majority of society. And the cost of being unsuccessful is dearly high—loss of the companionship of one's children. Indeed, *Boddie* held that an indigent was entitled to state-paid court costs in a divorce contest, and such cases almost always

involve the custody of children. Certainly, if the State must provide funds for an indigent mother's court costs for a divorce, the State should also provide her with counsel to protect her rights to something far more important to most mothers and to society—her right to custody of her children.

For the reasons expressed above and given in the decision in *Boddie* I would set each of these cases for argument or reverse them outright and hold that citizens cannot be barred from their courts because they are too poor to afford the required fees and bonds or because they cannot hire the professional legal help essential to turn the wheels of justice. There is simply no fairness or justice in a legal system which pays indigents' costs to get divorces and does not aid them in other civil cases which are frequently of far greater importance to society.

MR. JUSTICE DOUGLAS.*

The facts of these cases are set out by MR. JUSTICE BLACK. All of them except No. 6375, *Kaufman* v. *Carter*, involve people who are denied access to the judicial process solely because of their indigency. *Kaufman* presents a distinctly different problem. There the State commenced a civil suit in 1963, declared petitioner an unfit mother and took five of her seven children away from her. The status of the children is reviewed annually as required by state law. She did not initially seek counsel; but in the 1968 review proceedings she did. The State is enforcing its view of proper public policy. That procedure has consequences for the citizen so great that it is hardly an extension to say the rationale of *Douglas* v. *California*, 372 U. S. 353, demands that she be provided counsel. I would grant certiorari and reverse in this case.

---

*This opinion also applies to No. 5208, *Beverly* v. *Scotland Urban Enterprises, Inc., supra;* No. 5971, *In re Garland et al., infra;* No. 5054, *Bourbeau* v. *Lancaster, infra;* and No. 6375, *Kaufman* v. *Carter, infra.*

I believe a proper application of the Equal Protection Clause also requires that the access cases be reversed. Courts ought not be a private preserve for the affluent. All of these cases contain an invidious discrimination based on poverty, a suspect legislative classification. See *Griffin* v. *Illinois,* 351 U. S. 12; *Boddie* v. *Connecticut,* 401 U. S. 371, 383 (DOUGLAS, J., concurring).

Today's decisions underscore the difficulties with the *Boddie* approach. In *Boddie* the majority found marriage and its dissolution to be so fundamental as to require allowing indigents access to divorce courts without costs. When indigency is involved I do not think there is a hierarchy of interests. Marriage and its dissolution are of course fundamental. But the parent-child relationship is also of sufficient importance to require appointment of counsel when the State initiates and maintains proceedings to destroy it. Similarly, obtaining a fresh start in life through bankruptcy proceedings or securing adequate housing and the other procedures in these cases seemingly come within the Equal Protection Clause, as suggested by my separate opinion in *Boddie.*