[Civ. No. 30445. First Dist., Div. Four. Apr. 25, 1972.]

In re JOSEPH T., JR., a Person Coming Under the Juvenile Court Law.
JOSEPH J. BOTKA, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
JOSEPH T. et al., Defendants and Appellants.

**COUNSEL**

Peter Bull for Defendants and Appellants.

Thomas M. O'Connor, City Attorney, and Raymond D. Williamson, Jr., Deputy City Attorney, for Plaintiff and Respondent.

**OPINION**

**RATTIGAN, J.**—In advance of briefing and argument on this appeal on its merits, we here act upon appellants' motion for an order of this court appointing counsel to serve on the appeal at public expense.

Appellants are the parents of the above named minor. Their appeal is from an order of the juvenile court declaring the minor to be a dependent child as defined in subdivision (a) of section 600 of the Welfare and Institutions Code,[1] and ordering him removed from appellants' custody. (The present motion seeks the appointment of counsel to represent *appellants*, not the minor.) The order was entered in the course of proceedings, and extra-judicial events, which appellants summarize in their notice of motion, and in the memorandum of points and authorities supporting the motion, as follows:[2]

"On December 8, 1970, a juvenile probation officer in San Francisco filed a petition [in the Superior Court for the City and County of San Francisco, sitting as a juvenile court], alleging that . . . [the subject minor] . . . came within the . . . [provisions of section 600, subdivision (a)][3] . . . [T]he minor's parents [appellants] requested the . . . juvenile

---

[1]Unless otherwise indicated, all statutory references herein are to the Welfare and Institutions Code. The section and subdivision here cited provided, at pertinent times, as follows:

"600. Any person under the age of 21 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."

As will appear herein, related (but essentially different) juvenile court proceedings may be addressed to a minor pursuant to section 601 or section 602. Those statutes respectively provide as follows:

"601. Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court.

"602. Any person under the age of 21 years who violates any law of this State or of the United States or any ordinance of any city or county of this State defining crime or who, after having been found by the juvenile court to be a person described by Section 601, fails to obey any lawful order of the juvenile court, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[2]We resort to appellants' summary of the pertinent background facts, as recited in their notice of motion (which we quote, with minor editorial changes and some supplemental material as indicated), because it is supported in substantial part by the declarations of the appellant father and of one of the attorneys (Stephen Adams) named therein and because none of the facts or assertions stated in the notice of motion, or in the declarations mentioned, is disputed by respondent city and county (whose "answer and return" to appellants' motion consists of legal argument only).

[3]The probation officer alleged in the petition, among other things, "[t]hat said minor comes within the provisions of . . . [subdivision (a) of section 600] . . . in that the father of said person, who has a history of criminality, and the mother of

court to appoint counsel to represent them. That court had discretionary power to do so under . . . [section 634] . . . , but the court refused to do so . . . [T]he parents [appellants] eventually obtained the services of a volunteer lawyer. Just before the [juvenile court] hearing [on the petition], that lawyer, because of obligations to clients of her firm, became unavailable, and a substitute volunteer lawyer, Stephen Adams, agreed to appear for appellants at the juvenile court hearing.

"In the meantime, this [appellate] court had denied a petition by appellants for a writ of mandate to compel the appointment of compensated counsel,[4] the Supreme Court had declined to stay the juvenile court hearing pending decision on petition for hearing (subsequently denied on January 20, 1971), and the United States District Court had declined to issue a temporary restraining order staying the juvenile court hearing . . .

"Accordingly, Mr. Adams, who had accepted the case on less than two days notice, appeared in the juvenile court on January 14, 1971 and represented appellants in the hearing on that day and on January 19, 1971. Until the morning of the hearing, Mr. Adams had no opportunity to consult with the minor's father, who was incarcerated in [the] San Francisco County Jail on a burglary charge, but the referee denied Mr. Adams' request for a continuance on the grounds (1) that there had already been a continuance at the request of the previous volunteer lawyer and (2) [that] the court reporter had already been engaged for the day at some expense to the court. . . .

"At the hearing, the minor was purportedly represented by counsel appointed by and compensated by the [juvenile] court. That counsel and the referee insisted that it was the child who was represented, yet the record shows that the probation department took no position and presented no evidence except through that counsel, who at all times advocated the position of the department, [and] who was appointed by the [juvenile] court

---

said person are inadequate to the care and supervision of said person in that said parents failed to protect the younger sibling of said person from incurring such blows, lacerations and trauma as to result in death on or about November 5, 1970; that further, said parents are admittedly inadequate to the control of said person who allegedly delivered said 'blows, lacerations and trauma,' and who may himself be in danger of emotional trauma; that further the home of said person is unfit by reason of parental neglect; that therefore said person is in need of proper and effective parental care and control and has no parent or guardian actually exercising such care and control."

The petition's prayer read as follows: "Wherefore, your Petitioner, Nadia Stafford, Supervising . . . [Probation Officer] . . . , requests that the Court inquire into the matters herein alleged and make such orders as may be deemed proper for the best interest of the minor."

[4] Appellants' petition for writ of mandate, thus described, was denied on December 21, 1970.

some weeks before the hearing, and was paid over $300.00 for his efforts. [Par.] At the conclusion of the hearing, the referee found the minor to be a dependent child of the [juvenile] court, proceeded immediately to the dispositional phase of the case, and ordered the child removed from the [appellants'] home.[5] A number of witnesses with first hand knowledge of the parents, child, and home, were never called; nor was any continuance requested for the preparation of an alternative plan of in-home supervision . . .

"Appellants requested a rehearing before the judge of the juvenile court, which was denied. [Par.] . . . The juvenile court granted appellants' request for [a] free transcript [on appeal]; and this [appellate] court granted appellants' request to be relieved of filing fees [on the appeal].[6] However, . . . [this court, by subsequent letter] . . . denied appellants' request for appointment of counsel on appeal. [This] . . . motion is filed as a formal request that such denial be reconsidered."[7]

---

[5]We here refer to the order mentioned (from which the appeal has been taken). It was signed by the referee, signed by the juvenile court judge as "Approved," and entered, on January 25, 1971. It refers to the two hearings conducted in the juvenile court on January 14 and 19, 1971, and identifies at least two dozen witnesses who testified at them. Summarizing the evidence in its support, the order then reads as follows:
"THE COURT FINDS:
"· · · · · · · · · · · · · ·
"2. That the minor . . . is under the age of 21 years, namely 3 years of age, having been born on November 3, 1967;
"3. That the allegations of the petition are true; that the [appellant] father has a long history of criminal behavior . . . and several felony convictions and is presently incarcerated, having been sentenced to the County Jail on January 14, 1971 on two counts of burglary to which he pled guilty; a sister of this minor . . . [named] . . . died on or about November 5, 1970 and was brought to . . . [a named hospital] . . . on or about November 6, 1970 and was pronounced 'dead on arrival' by the hospital physicians; that the parents [appellants herein] were unable to explain the cause of death; the Coroner's report . . . indicates that death was due to 'acute peritonitis due to traumatic rupture of stomach'; the testimony of the doctors indicates that the body, upon examination, showed that the minor [the subject minor's infant sister] had suffered a severe blow to the abdomen and that the body also showed evidence of old injuries; that this evidence is . . . supported by pictures taken of the [i.e., her] corpse . . . ; the parents [appellants] engage in frequent family quarrels; that treatment of the [deceased] minor . . . had been extremely harsh during her lifetime; that . . . [the subject minor, Joseph T.] . . . has been subjected to inconsistent severe discipline; . . ."
The order goes on to state that, "in view of all of the foregoing," the (juvenile) court finds that the subject minor comes within the provisions of section 600, subdivision (a), declares him to be a dependent child as defined therein (see fn. 1, *ante*), and orders him removed from the custody of his parents for "out-of-home placement" by the San Francisco Department of Socal Services.
[6]In prior proceedings, and by reference thereto on the present motion, appellants have made an adequate showing that they do not have the means to employ private counsel.
[7]By acting upon appellants' formal motion for appointment of counsel, we are

Appellants contend that, having made an adequate showing of their indigence (see fn. 6, *ante*), they are entitled to court-appointed counsel on appeal as a matter of constitutional right; that we have the authority and discretion to appoint such counsel irrespective of constitutional considerations; and that we should exercise both, in their favor, by granting the present motion. For the reasons next stated, appellants' arguments cannot be sustained; we deny the motion.

### The Constitutional Argument

Appellants argue that a judicial refusal to appoint counsel for them, on appeal from this juvenile court order depriving them of the custody of their child as a "dependent child" (§ 600, subd. (a)), operates (1) to deny them due process of law because the order rests upon a fallacious distinction between a "civil" cause (which this one nominally is) and a "criminal" matter, and (2) to deny them equal protection, for the same reason and because the order invidiously discriminates against them as indigent persons.

In opposition to these arguments, respondent city and county invokes *In re Robinson* (1970) 8 Cal.App.3d 783 [87 Cal.Rptr. 678]. In *Robinson*, a mother had been denied court-appointed counsel at a juvenile court hearing at which the dependency status of some of her children, as previously ordered by the court pursuant to section 600, subdivision (a), was renewed as provided by section 729. (*Id.*, at p. 785.) Upon her appeal, the *Robinson* court stated as follows:

"Appellant contends the proceedings were defective because neither she nor her children were furnished the services of appointed counsel to which they were entitled under the federal and state Constitutions and under sections 634, 679, 700, and 729 of the Welfare and Institutions Code. [Par.] We find no statutory or constitutional right to appointed counsel for either parent or child in a proceeding in which the dependency status of the child is the issue. Sections 634, 679, 700, and 729 of the Welfare and Institutions Code and section 27706, subdivision (e) of the Government Code make it clear that the minor's right to appointed counsel is limited to cases under sections 601 and 602 of the Welfare and Institutions Code (delinquency proceedings) and neither the minor nor the parent is entitled of right to appointed counsel at public expense in a proceeding to adjudicate

granting reconsideration as here requested. Counsel representing appellants on their motion, according to their notice thereof, is appearing "specially for the limited purpose of presenting . . . [the] . . . motion" for appointment of counsel. According to his statements to this court at oral argument of the motion, counsel is associated with the Youth Law Center (San Francisco), which is apparently a federally funded agency providing indigent litigants with counsel in appropriate cases.

the dependency status of a child. Cases relied upon by appellant, *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], and *Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], are inapposite since they involved charges of wrongdoing which would fall within sections 601 and 602 of the Welfare and Institutions Code. *Gault* does not require that the constitutional safeguards of counsel applicable to criminal cases be met in all civil cases, as appellant contends; rather it requires counsel only in cases denominated 'civil' which are basically criminal in nature. We view a proceeding to adjudicate the dependency status of a child as a true civil cause, comparable in essentials to a child custody controversy between parents, except that the controversy is not between parents but one between a parent (or parents) and the state as *parens patriae*." (*In re Robinson, supra,* 8 Cal.App.3d 783 at pp. 785-786.)

The Supreme Court of California denied a hearing in the *Robinson* case (see *In re Robinson, supra,* 8 Cal.App.3d 783 at p. 787), and the Supreme Court of the United States denied certiorari (*id.* [*sub nom. Kaufman* v. *Carter*], 402 U.S. 964 [29 L.Ed.2d 128, 91 S.Ct. 1624]), with dissents by Justices Black and Douglas. (402 U.S. 954-961 [29 L.Ed.2d 124-128, 91 S.Ct. 1624].) Although the decision of the *Robinson* court in California (*In re Robinson, supra,* 8 Cal.App.3d 783) dealt with the claimed right of a parent to court-appointed counsel at the trial (i.e., the juvenile) court level, it appears to apply with equal or greater force where, as here, the parents assert the same right on appeal.

The *Robinson* court (*In re Robinson,* as quoted *supra,* 8 Cal.App.3d 783 at pp. 785-786) did not analyze the asserted right to court-appointed counsel in explicit terms of violation of "due process" and "equal protection" as claimed by the present appellants. It inferably rejected the due process argument, however, by relying upon the civil-versus-criminal distinction now challenged by appellants and by distinguishing other decisions directed to due process in juvenile court proceedings. (*In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; *Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045]. See *In re Robinson,* as quoted *supra,* 8 Cal.App.3d 783 at pp. 785-786.) Moreover, we must conclude from the dissents of Justices Black and Douglas (*In re Robinson, supra* [*sub nom. Kaufman* v. *Carter*], 402 U.S. 954-961 [29 L.Ed.2d 124-128]) that the due process and equal protection points were both considered, and rejected, by the Supreme Court of the United States. Under these circumstances, the *Robinson* decision requires us, as well, to reject appellants' contention that they have a constitutional right to court-appointed counsel on the present appeal.

### *This Court's Statutory Authority to Appoint Counsel on the Present Appeal*

Constitutional considerations aside, the next question is whether any statute authorizes this court to appoint publicly compensated counsel for appellants on this appeal. Sections 600, 601 and 602 contemplate "civil" juvenile court proceedings addressed to dependent, neglected or abandoned children (§ 600), or "criminal" proceedings involving minors whose conduct portends delinquency (§ 601) or who have committed crimes or disobeyed juvenile court orders. (§ 602. See fn. 1, *ante; In re Robinson,* quoted *supra,* 8 Cal.App.3d 783 at pp. 785-786.) All three statutes appear in article 5 of the chapter of the Welfare and Institutions Code known as the Arnold-Kennick Juvenile Court Law. (Chapter 2 [commencing with § 500] of part 1 of division 2 of the code.) As the *Robinson* court indicated, statutory provisions dealing with court-appointed counsel in such proceedings are found in sections 634, 679, 700 and 729 of the same chapter, and in Government Code section 27706, subdivision (e). (*In re Robinson, supra.*)

Section 729 requires announcement of the right to counsel, as it may appear, at annual hearings relative to the renewal of dependency status once ordered pursuant to section 600. Government Code section 27706, subdivision (e), relates only to the authority of the public defender to serve as court-appointed counsel in a juvenile court proceeding. As neither statute declares a right to counsel in any person, neither is relevant to the present inquiry.

Under the present language of the first and third sentences of section 634,[8] which appeared in the statute when it was first enacted by the 1961 Legislature as part of the original Arnold-Kennick Juvenile Court Law (Stats. 1961, ch. 1616, § 2, p. 3475), "the court may" appoint counsel for an impecunious minor *or* parent in a juvenile court proceeding con-

---

[8]"634. When it appears to the court that the minor or his parent or guardian desires counsel but is unable to afford and cannot for that reason employ counsel, the court may appoint counsel. In a case in which the minor is alleged to be a person described in Section 601 or 602, the court shall appoint counsel for the minor if he appears at the hearing without counsel, whether he is unable to afford counsel or not, unless there is an intelligent waiver of the right of counsel by the minor; and, in the absence of such waiver, if the parent or guardian does not furnish counsel and the court determines that the parent or guardian has the ability to pay for counsel, the court shall appoint counsel at the expense of the parent or guardian. In any case in which it appears to the court that there is such a conflict of interest between a parent or guardian and child that one attorney could not properly represent both, the court may appoint counsel, in addition to counsel already employed by a parent or guardian or appointed by the court to represent the minor or parent or guardian. In a county where there is no public defender the court may fix the compensation to be paid by the county for service of such appointed counsel."

ducted pursuant to sections 600, 601 or 602. The present language of the second sentence, which was enacted by amendment of section 634 at the Regular Session of the 1967 Legislature (Stats. 1967, ch. 1355, § 4, pp. 3193-3194), provides that "the court shall" appoint counsel, but only if the proceeding is conducted pursuant to section 601 or 602 and only for the eligible minor, not the parent. As amended by the same 1967 legislation (Stats. 1967, ch. 1355, § 8, p. 3195), section 679 declares that such minor or his parent (see § § 656, subd. (e), and 658) has the "right" to court-appointed counsel, but—again—in a section 601 or 602 proceeding only.[9] As also amended by the same 1967 legislation (Stats. 1967, ch. 1355, § 10, pp. 3195-3196) section 700 in effect incorporates the just-mentioned language of sections 634 and 679; it explicitly provides that "the court may" appoint counsel for the minor in a section 600 proceeding, but does not mention his parents.[10]

In construction of the Welfare and Institutions Code, " '[s]hall' is mandatory and 'may' is permissive." (§ 15.) Each of the three statutes just examined refers to the appointment of counsel at the "hearing" stage, only, of a juvenile court proceeding. (See fns. 8 [§ 634], 9 [§ 679] and 10 [§ 700], *ante*.) Section 550 imports that "the court" in which any of the three statutes vests the authority or duty (or both), to appoint counsel in a proper case, is the *superior* court only, sitting as a juvenile court.[11] In the last sentence of section 634 (quoted in fn. 8, *ante*), the Legislature provided

---

[9]"679. A minor who is the subject of a juvenile court hearing and any person entitled to notice of the hearing under the provisions of Section 658, is entitled to be present at such hearing. Any such minor and any such person has the right to be represented at such hearing by counsel of his own choice or, if unable to afford counsel, has the right to be represented by counsel appointed by the court in cases in which the minor is alleged to be a person described by Section 601 or Section 602."

[10]Section 700 provides in pertinent part as follows: "700. At the beginning of the hearing on a petition filed pursuant to . . . [§§ 600, 601 or 602] . . . [t]he [juvenile court] judge shall ascertain whether the minor and his parent or guardian or adult relative, as the case may be, has been informed of the right *of the minor* to be represented by counsel, and if not, the judge shall advise the minor and such person, if present, of the right to have counsel present and where applicable, of the right to appointed counsel. If such person is unable to afford counsel and desires to have *the minor* represented by counsel, the court may in a case in which the minor is alleged to be within the provisions of Section 600, appoint counsel *to represent the minor*. In a case in which the minor is alleged to be a person described in Section 601 or 602, the court *shall* appoint counsel to represent *the minor* if he appears at the hearing without counsel, whether he is unable to afford counsel or not, unless there is an intelligent waiver of the right of counsel by the minor; and, in the absence of such waiver, if the parent or guardian does not furnish counsel and the court determines that the parent or guardian has the ability to pay for counsel, the court shall appoint counsel at the expense of the parent or guardian." (Italics added.)

[11]Section 550 provides as follows: "Each superior court shall exercise the jurisdiction conferred by this chapter [i.e., by the Arnold-Kennick Juvenile Court Law], and while sitting in the exercise of such jurisdiction, shall be known and referred to as the juvenile court."

that compensation for the services of court-appointed counsel, at the hearing stage of a juvenile court proceeding, would be paid from the resources of the county involved (see also Gov. Code, § 27706, subd. (e) [relative to the services of the public defender if available in such case]), but not from state funds (which are the source of such compensation in all cases—juvenile proceedings included—which are essentially "criminal" in nature. (Pen. Code, § 1241.)[12]

Read together in light of these considerations, the three statutes (§§ 634, 679 and 700) rather clearly reflect the intent of the Legislature to limit the *right* of court-appointed counsel to the minor, at the "hearing" stage in the juvenile court alone and only in a section 601 or 602 proceeding, because of the "criminal" implications, as to him, of a proceeding conducted under either statute: i.e., to honor his—the minor's—due process right to court-appointed counsel at the juvenile court hearing, in a proceeding which is essentially "criminal" in nature, as declared by the Supreme Court of the United States in the *Gault* decision. (*In re Gault* (1967) 387 U.S. 1, 34-41 [18 L.Ed.2d 527, 550-554, 87 S.Ct. 1428].[13] See *In re Robinson*, quoted *supra*, 8 Cal.App.3d 783 at p. 786.) ▆ As the Legislature accomplished this limited purpose in full (see Gardner, *Gault and California* (1968) 19 Hastings L.J. 527, 536) but apparently intended

---

[12]"1241. In any case in which counsel has been appointed by the Supreme Court or by a court of appeal to represent a party to any appeal or proceeding *in a criminal matter*, such counsel shall receive a reasonable sum for compensation and necessary expenses, the amount of which shall be determined by the court and *paid from any funds appropriated* for that purpose. Claim for the payment of such compensation and expenses shall be made on a form prescribed by the Judicial Council and presented by counsel to the clerk of the appointing court. After the court has made its order fixing the amount to be paid the clerk shall transmit a copy of the order to the state Controller who shall draw his warrant in payment thereof and transmit it to the payee." (Italics added.)

The Legislature has annually appropriated funds "for that purpose" (Pen. Code, § 1241), and will presumably continue to do so. (See, e.g., Courts of Appeal . . . Appointed Counsel in Criminal Appeals, 1972-1973 Governor's Budget as submitted to the Legislature on January 12, 1972, page 4. See *id.*, page 5, line 26 [proposing a $681,202 appropriation for compensation of "(a) appointed counsel in criminal appeals"].) It is clear from this source, and from similar sources and legislative appropriations in past years, that the state funds appropriated to pay for representation on appeal are limited to "criminal matters" (Pen. Code, § 1241), which definition excludes both the minor and his parents in a section 600 proceeding and which does not reach the parents in any juvenile court proceeding. Realistically, therefore, there are no state funds available for compensation of appellants' counsel on the present appeal even if we were persuaded to grant their present motion.

[13]The same conclusion is dictated by the coincidence, in point of time, between the effective date of the *Gault* decision and the California Legislature's enactment of the present language of sections 634, 679 and 700 relative to court-appointed counsel. The *Gault* case was decided by the United States Supreme Court on May 15, 1967. (*In re Gault, supra*, 387 U.S. 1.) Within 30 days thereafter (on June 13, 1967), the incorporation of its substance into sections 634, 679 and 700 was proposed by the California Assembly's adoption of author's amendments to

to go no further, it appears that no provision of sections 634, 679 or 700 guarantees court-appointed counsel to indigent parents, as a matter of statutory right, at any stage of a juvenile court proceeding involving their child (and whether conducted under section 600, 601 or 602); and, specifically, that no such provision in any of the sections mentioned (or in any other section of the Arnold-Kennick Juvenile Court Law) authorizes this court to appoint counsel for the parents of an affected minor on their appeal from an order entered in any such proceeding (including this one).

■ Eligible parents are guaranteed court-appointed counsel in a superior court proceeding brought for the purpose of having their minor child declared free from their custody and control, pursuant to chapter 4 (commencing with § 232) of title 2 of part 3 of division 1 of the Civil Code. (*Id.*, § 237.5.) That proceeding, however, was not included in the Arnold-Kennick Juvenile Court Law because the Legislature conceived it to be ancillary to proceedings involving the prospective adoption of the minor (see *Selected 1960-1961 California Legislation* (1961) 36 State Bar J. 862, 864; Review of Selected 1965 Code Legislation (Cont. Ed. Bar 1965) pp. 46-47), which is not involved here; it is limited to certain classes of minors (*id.*, §§ 231-232) which do not include the subject child (see the present petition and order as quoted in fns. 2 and 5, *ante*); and the statutory provisions for court-appointed counsel for the parents therein apply at the superior court hearing stage only. (*Id.*, § 237.5.) For any or all of these reasons, the legislation underlying it (*id.*) does not authorize this court to appoint counsel for the parents (appellants) on the present appeal.

### This Court's "Inherent Power" to Appoint Counsel on the Present Appeal

■ Appellants urge in effect that, apart from relevant and explicit statutory provisions, we have "inherent power" to appoint counsel for them,

a then-pending bill. After the language of the June 13 amendments had been reworded in subsequently adopted amendments of the same bill, and after the latter had moved forward in the 1967 legislative process, the substance of the *Gault* holding, as to the minor's right to counsel, appeared in the bill upon its final passage and when it was approved by the Governor and subsequently chaptered. (See, in succession and with reference to the 1967 Regular Session of the Legislature, Assem. Bill 1095 [as introduced by Assemblyman Biddle with various co-authors]; Final Calendar of Legislative Business, p. 371 [Assem. Bill 1095]; 3 Assem. J., pp. 4119-4122 [author's amendments adopted on June 13], 4360-4361 [June 20]; 3 Sen. J., pp. 3170 [June 29], 3565 [July 11], 3917-3918 [July 24]; 4 Assem. J., pp. 6309-6310 [Assembly concurrence in Senate amendments of Assem. Bill 1095]; Stats. 1967, ch. 1355, § 4, pp. 3193-3194 [amending § 634]; *id.*, § 8, p. 3195 [amending § 679]; *id.*, § 10, pp. 3195-3196 [amending § 700].) We must presume that the Legislature was familiar with the *Gault* decision, and was reacting to it, when it acted in this sequence at its 1967 Regular Session. (See *Sutter Hospital* v. *City of Sacramento* (1952) 39 Cal.2d 33, 38 [244 P.2d 390]; *Estate of Fabris* (1962) 200 Cal.App.2d 408, 414 [19 Cal.Rptr. 397].)

and that we should exercise it in order to provide them with an effective appeal which seriously affects their parental relationship with the subject minor. (See the order as quoted in fn. 5, *ante*.) The decision upon which they rely in support of this contention (*Ferguson* v. *Keays* (1971) 4 Cal.3d 649 [94 Cal.Rptr. 398, 484 P.2d 70]) is not in point. The *Ferguson* case dealt with the "inherent power of an appellate court to waive its own filing fees to accommodate indigent civil litigants" (*id.*, at p. 654), not with such litigants' right to court-appointed counsel on their appeal. Moreover, the *Ferguson* court determined that "appellate courts have the inherent power to permit indigents to seek appellate relief in forma pauperis" (*id.*, at p. 656 [fn. 6]), but presupposed that such litigants had counsel by requiring the latter, in any case, to certify to the merits and good faith of the proposed appeal as a condition of the appellate court's waiver of filing fees. (*Id.*, at pp. 658-659.) Accordingly, we do not find in *Ferguson* any definition of our "inherent power" to appoint counsel on appeal, for indigent litigants, where constitutional mandates do not require such appointment and where the Legislature has not explicitly authorized it.

Finally, counsel representing appellants on their motion has indicated to this court that, if he is unsuccessful in establishing their constitutional right to court-appointed counsel on appeal, or the authority of this court to order it as a matter of judicial discretion, he will nonetheless represent them on the merits of their appeal.[14] As previously indicated, present counsel is associated with a *pro bono publico* agency which apparently exists for the purpose of providing counsel for indigents where the law does not do so. (See fn. 7, *ante*.) This is such a case, and present counsel has amply demonstrated his professional competence by his efforts on this motion. For these reasons, and in view of the prospect that he will continue to represent appellants, it does not appear that a miscarriage of justice will occur by reason of their inability to afford private counsel.

The motion for the appointment of counsel on appeal is denied.

Devine, P. J., and Bray, J.,\* concurred.

A petition for a rehearing was denied May 23, 1972, and appellants' petition for a hearing by the Supreme Court was denied July 12, 1972.

---

[14]Counsel stated as much to this court at oral argument of the present motion.

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.