Joseph F. G-agliardi, J.
Two potential plaintiffs in proposed divorce actions and a defendant in a divorce action have moved pro se for poor person relief and assignment of counsel to serve *286 without fee (CPLB art. 11). For purposes of these motions, the court shall assume, based upon uncontroverted evidence, that movants are indigents as a matter of law (Adkins v. Dupont Co., 335 U. S. 331). Consequently, leave to proceed as poor persons is granted.
By statute, assignment of counsel is a matter within the discretion of the court (CPLB 1102, subd. [a]; Hotel Martha Washington Mgt. Co. v. Swinick, 66 Misc 2d 833). Movants contend that they have a constitutional right to counsel, and rely upon Boddie v. Connecticut (401 U. S. 371), which was decided in 1971. The court in Boddie held that it was a violation of due process to deny access to the courts to poor persons who desired judicial dissolution of their marriage. Thus, the court concluded that certain filing fees and other court costs must be waived to . enable indigent litigants to have their day in court. Boddie is an access case but is not the sine qua non of requiring assistance of counsel in all civil litigation (cf. Gregonis v. Philadelphia & Reading Coal & Iron Co., 235 N. Y. 152; Note, 26 Vand. L. Rev. 25; Note, 82 Yale L. J. 1055; Goodpaster, Integration of Equal Protection, Due Process Standards, and Indigent’s Bight of Free Access to Courts, 56 Iowa L. Bev. 223, 231-232; Comment, 55 Michigan L. Bev. 413, 420-421; also, see, Ortwein v. Schwab, 410 U. S. 656, rehearing den. 411 U. S. 922; United States v. Kras, 409 U. S. 434). In pre-Boddie cases, the Supreme Court had refused to announce a right to counsel in civil matters (Hackin v. Arizona, 389 U. S. 143; Sandoval v. Rattikin, 385 U. S. 901; see Note, 76 Yale L. J. 545; Comment, 66 Columbia L. Bev. 1322). In two post-Boddie matters involving denial of assignment of counsel, the Supreme Court denied certiorari (Meltzer v. LeCraw & Co., 402 U. S. 954; Kaufman v. Carter, 402 U. S. 964). In 1973 our Court of Appeals held that an indigent parent in a child neglect proceeding, was constitutionally entitled to counsel since the parent faced possible criminal charges and it was unfair for the State to be an adversary against an unrepresented party (Matter of Ella B., 30 N Y 2d 352). These factors are not present at bar and the reasoning in Matter of Ella B. is, therefore, not applicable here.
An overwhelming majority of jurisdictions that have considered the issue of right to counsel in civil cases have held that no constitutional right attached thereto (Securities & Exch. Comm. v. Alan F. Hughes, Inc., 481 F. 2d. 401, cert. den. 414 U. S. 1092; Peterson v. Nadler, 452 F. 2d 754; Matter of Robinson v. Kaufman, 8 Cal. App. 3d 783, cert. den. sub nom. Kaufman v. Carter, 402 U. S. 954, 964; Archuleta v. Grand Lodge of Int. *287 Assn. of Machinists & Aerospace Workers, 262 Cal. App. 2d 202; Powell v. State, 19 Ariz. App. 377; Matter of Waite, 143 Mont. 321; cf. Dade County v. McCrary, 260 So. 2d 543 [Fla.]; Caron v. Betit, 131 Vt. 53; Peace v. Peace, 288 N. E. 2d 602 [Mass.]).
Boddie (401 U. S. 371, supra) instructs us that matrimonial matters are closely allied with State action concepts under the due process clause. A form of State action exists in divorce proceedings brought in this State by virtue of our constitutional provision requiring “ due judicial proceedings ” prior to the grant of a divorce. (N. Y. Const., art. I, § 9, subd. 1; see Domestic Relations Law, §§ 144, 211; CPLR 3211, subd. [d], 3215, subd. [b]; General Obligations Law, § 5-311.) As noted earlier, Boddie is an access case lacking equal protection implications and it is concluded that since all indigent civil litigants are accorded access to the courts in this State, there is no denial of equal protection in refusing to assign court-appointed counsel (cf. Boss v. Moffitt, 417 U. S. 600). Furthermore,, the fact that a Judge’s order is ultimately required to sever the matrimonial relationship is not such State action as necessitates appointment of counsel under the due process clause (cf. Moose Lodge No. 107 v. Irvis, 407 U. S. 163; Blye v. Globe-Wernicke Realty Co., 33 N Y 2d 15; Jeffreys v. Jeffreys, 58 Misc 2d 1045, revd. other grounds 38 A D 2d 431; Note, 74 Col. L. Rev. 656, 659-660, 677-680, 685-686). Accordingly, the court holds that the due process clause does not require appointment of counsel in these proposed and actual divorce proceedings (see Board of Regents v. Roth, 408 U. S. 564; Gleason v. Gleason, 26 N Y 2d 28; cf. Matter of Ella B., 30 N Y 2d 352, supra).
Movants present an alternative argument, that if they are not constitutionally entitled to counsel, the courts will assign counsel in matrimoniáis as a matter of policy. The Legal Aid Society of Westchester County has refused to represent movants on the ground that it is understaffed and overworked. Consequently, our inquiry narrows down to whether the private Bar may be assigned (Cerami v. Cerami, 44 A D 2d 890; Vanderpool v. Vanderpool, 40 A D 2d 1030).
There is a line of authority which supports movants’ view that uncompensated counsel will be assigned to indigent matrimonial litigants in the absence of the availability of a Federally funded organization to provide representation (Smiley v. Smiley, 45 A D 2d 785; Jacox v. Jacox, 43 A D 2d 716; Matter of Bartlett v. Kitchin, 76 Misc 2d 1087; see Emerson v. Emerson, 33 A D 2d 1022; Brounsky v. Brounsky, 33 A D 2d 1028). How *288 ever, none of the cited cases addressed itself to the constitutional rights of assigned counsel to be paid for their endeavors.
Compensation for assigned counsel is statutorily provided for in criminal, habeas corpus and civil retention matters (Judiciary Law, § 35; County Law, art. 18-B), and in specified Family Court matters (Family C't. Act, §§ 245, 248, 621, 831, 1043). In the absence of a statute, the court lacks power to award attorney’s fees to assigned counsel (Jacox v. Jacox, 43 A D 2d 716, supra)[1].
Under the Fifth Amendment to the Federal Constitution, thes due process clause of the Fourteenth Amendment and section 6 of article I of the New York State Constitution, it is provided that “ no person shall-be deprived of life, liberty or property without due process of law ”. The Thirteenth Amendment to the Federal Constitution prohibits involuntary servitude and while no direct provision in point exists in this State’s Constitution (9 N. Y. Jur., Constitutional Law, § 234) article I (§ 7, subd. [a]) thereof and the Fifth Amendment to the Federal Constitution forbids the taking of private property for public use without just compensation. The determination in Hurtado v. United States (410 U. S. 578) seemingly precludes farther inquiry regarding involuntary servitude and the balance of our discussion will relate to the due process rights of assigned counsel.
Nowhere in the right to counsel cases does the Supreme Court state that counsel must be assigned to serve without compensation (Gagnon v. Scarpelli, 411 U. S. 778; Argersinger v. Hamlin, 407 U. S. 25; Coleman v. Alabama, 399 U. S. 1; Goldberg v. Kelly, 397 U. S. 254; Johnson v. Avery, 393 U. S. 483; Matter of Gault, 387 U. S. 1; Gideon v. Waimvright, 372 U. S. 335; Powell v. Alabama, 287 U. S. 45). Indeed, in the very recent decision in Gagnon v. Scarpelli (supra), wherein the court considered the right to counsel in parole and revocation situations, it was noted that one factor to be emphasized in requiring assis-' tance of appointed counsel is (p. 788) “ the financial cost to the State ”. Implicit in the above statement is the requirement of payment for assigned legal representation and in Matter of Ella B. (30 N Y 2d 352, supra), the Court of Appeals referred to (p. 357) “ court-appointed and compensated counsel ” (quoting from Cleaver v. Wilcox, 40 U. S. Law Week at 2659).
*289 The question regarding assigned counsel’s right to compensation has been raised in virtually every jurisdiction in this country (Ann. 21 ALR 3d 819, Bepresenting Indigent-Compensation ; 7 Am. Jur. 2d., Attorneys at Law, § 207; 7 C. J. S., Attorney and Client, § 172; 2 R. C. L., Attorneys at Law, §§ 28, 117; Note, 44 L. R. A. [N. S.] 1195; Note, 36 L. R. A. [N. S.] 379; 2 Speiser, Attorneys’ Fees, § 14.74). An overwhelming majority holds that an attorney’s constitutional rights are not violated when he is assigned to represes! an indigent in a criminal case on a no compensation basis (Weiner v. Fulton County, 113 Ga. App. 343, cert. den. 385 U. S. 958; Jackson v. State, 413 P.2d 488 [Alaska]; United States v. Dillon, 346 F. 2d 633, cert, den. 382 U. S. 978). The rationale of these cases is that no “ taking ” has occurred since defense of paupers accused of crimes traditionally has been considered one of the services to be performed by the Bar at the request of the court (United States v. Dillon, supra). A minority have found that a “ taking ” of property occurs but such taking is not compensable because the Bar is merely performing a service owed to the public (see, e.g., Weiner v. Fulton County, supra; Note, 52 Cornell L. Q. 433, 436-438). Other jurisdictions have concluded that assignment without fee in criminal matters passes const!-'' tutional muster but to ensure both the rights of the attorney and indigent the courts have directed the State authorities to provide payment for the services rendered (People ex rel. Conn v. Randolph, 35 Ill. 2d 24).
Indiana is apparently the only jurisdiction that has consistently held that assigned counsel in criminal cases must be paid as a matter of constitutional right (State ex rel. Old Underwriters v. Bell, 244 Ind. 701; Webb, Auditor & Co. v. Baird, 6 Ind. 13). However, the decisions turn upon a State constitutional provision which prohibits the taking of one’s services without just compensation. Initially, Iowa (Ferguson v. Pottawattamie County, 224 Iowa 516) and Wisconsin (County of Dane v. Smith, 13 Wis. 585) held in accord with Indiana but these two jurisdictions subsequently modified their views and determined that no constitutional violations arise upon payment of inadequate compensation to assigned counsel (Woodbury County v. Anderson, 180 Iowa 943; Green Lake Co. v. Waupaca Co., 113 Wisc. 425). This is the position recently adopted in part by New Jersey and Florida (State v. Bush, 46 N. J. 399; Mackenzie v. Hillsborough County, 288 So. 2d 200 [Fla.]; cf. Matter of State v. Frankel, 119 N. J. Super. 579, cert. den. 409 U. S. 1125). However, in 1970 the State of Missouri joined Indiana as a *290 inember of the minority view (State v. Green, 470 S.W. 2d 571 [Mo.]) and earlier this year the State of Kentucky followed suit)' “ Therefore, we conclude as did the learned trial judge that the time has arrived to declare the burden of such service [uncompensated counsel] a substantial deprivation of property and constitutionally infirm ” and held that “ the system of court-appointed uncompensated counsel does not meet the constitutional standards of either the Constitution of the United States or the Constitution of this State ” (Bradshaw v. Ball, 487 S. W. 2d 294, 298, 299 [Ky.]; cf. Warner v. Commonwealth, 400 S. W. 2d 209 [Ky.], cert. den. 385 U. S. 858).
One jurisdiction, the State of Utah, differentiates between civil and criminal assignments without fee and holds that the requirement to accept civil assignments constitutes involuntary servitude (Matter of Bedford v. Salt Lake County, 22 Utah 2d 12). The entire area of uncompensated counsel vis-a-vis the Constitution was recently summed up by the highest court in the State of Washington (citations omitted):
“ In favor of the majority rule, it is argued that to serve the cause of justice on behalf of an indigent is a professional honor for which an appointed counsel need not and ought not demand compensation; that such gratuitous service is a duty imposed by tradition, the Canons of Professional Ethics, and the attorney’s oath and is a price paid by the attorney for the privileges attaching to his profession; that gratuitous service may be required of an attorney because representation of an indigent is a duty incident to his station as an officer of the court charged with the administration of justice and there is no constitutional requirement that every public official be paid for his services; that the courts have no power over public funds collected for public purposes absent legislative authorization; and that requiring an attorney to render gratuitous service on behalf of an indigent is not a taking of his property for public purposes without just compensation contrary to constitutional provisions.
“ In support of the minority rule, it is variously argued, particularly in the light of expanding modern concepts in the field of criminal law, embracing as they do an increase in the volume of assignments as well as the extent of the duties imposed by an assignment, that the representation of the indigent on court appointment can no longer be considered an honorary duty, but instead has become an extremely heavy and overbalanced burden which becomes increasingly unfair to impose upon the professional alone,” (Matter of Honore v. Washington State Bd. of Prison Terms & Paroles, 77 Wn. 2d 660, 677-678.)
*291 Thus, the court, sitting en banc, held that counsel assigned on appeal was entitled to be paid, and authorized submission of his claim to the State Legislature. This rationale was subsequently applied to a civil case where the court held that a defendant could file a claim for costs with the Legislature if he was successful in defending an appeal taken against him by the appellant, who was proceeding in forma pauperis (Iverson v. Marine Ban Corporation, 83 Wn. 2d 163; cf. Bradley v. Jones, 43 U. S. Law Week 2002 [La.] [indigent unsuccessful plaintiff not required to pay defendant’s counsel fees]).
In New York the cases are legion in stating the proposition that the court has inherent power to assign counsel without compensation (People v. Monahan, 17 N Y 2d 310, 313; People v. Witenski, 15 N Y 2d 392, 396-397; Matter of Sullivan, 297 N. Y. 190, 195-196; Matter of Snitkin v. Taylor, 276 N. Y. 148, 152; People v. Price, 262 N. Y. 410; People ex rel. Ransom v. Board of Supervisors of Niagara County, 78 N. Y. 622; People v. Thompson, 205 App. Div. 581; People ex rel. Whedon v. Board of Supervisors of Washington County, 192 App. Div. 705; People ex rel. Acritelli v. Grout, 87 App. Div. 193, affd. on prevailing opn. below 177 N. Y. 587; People ex rel. Hadley v. Supervisors of Albany County, 28 How. Prac. 22 )[2].
Nonetheless, it does not appear that the constitutionality of such declared power has ever seriously been litigated in this State. The Hadley case {supra) which was decided in 1864 is generally regarded as the leading decision in point, wherein it was held that, in the absence of statutory authority, counsel assigned to represent an indigent criminal defendant could not be paid and such assignment did not violate his constitutional rights.[3] The court discussed an Indiana case to the contrary but noted that the opposing decision relied upon that State’s *292 Constitution which, was unlike New York’s (28 How. Prac. 22, 26). Subsequently, the Court of Appeals, in a one sentence opinion, observed that Hadley represented a “ sound exposition of the law ” (People ex rel. Ransom v. Board of Supervisors of Niagara County, 78 N. Y. 622, supra).
In 1920, the Appellate Division, Third Department, noted the failure of the statutory scheme to provide payment in certain criminal matters did not violate assigned counsel’s constitutional rights (People ex rel. Whedon v. Board of Supervisors of Washington County, 192 App. Div. 705, supra).
It has often been .said that an attorney is an officer of the court and his position is a matter of privilege, subject to certain burdens (Matter of Zuckerman, 20 N Y 2d 430, cert. den. 390 U. S. 925; Matter of Rouss, 221 N. Y. 81, cert. den. 246 U. S. 661). However, the right to conduct a business and enter a profession is considered a property right within the meaning of various constitutional provisions (9 N. Y. Jur., Constitutional Law, §§ 226-229, 356; 16 Am. Jur. 2d., Constitutional Law, § 371). It has been said that the right to practice in any profession is “ a valuable property right, in which, under the Constitution and laws of the State, one is entitled to be protected and secured ’ ’ (Matter of Bender v. Board of Regents of Univ. of State of N. Y., 262 App. Div. 627, 631; Ann. 6 L. ed. 2d 1328, Professional License — Due Process). Whether an attorney’s right to practice is regarded as a property right or a privilege (cf. Schware v. Board of Bar Examiners, 353 U. S. 232, 239), such right is protected by the Federal Constitution (Matter of Ruffalo, 390 U. S. 544; Konigsberg v. State Bar, 353 U. S. 252; Konigsberg v. State Bar, 366 U. S. 36) since “ lawyers also enjoy first-class citizenship ” (Spevack v. Klein, 385 U. S. 511,. 516). Admission to the Bar is not a matter of grace (Willner v. Committee on Character, 373 U. S. 96; Ann. 2 ALR 3d 1266 Admission to Bar — Due Process). Membership in the Bar with its attendant stringent requirements is a device designed to protect the public and assure them of competent advice (Matter of New York County Lawyers’ Assn. v. Dacey, 28 A D 2d 161, revd. other grounds 21 N Y 2d 694).
*293 In contemplation of law the legal profession is not a business and attorneys have “ a duty to subordinate financial reward to social responsibility ” (Matter of Freeman, 34 N Y 2d 1, 7). Counsel in Westchester County are engaged in a variety of pro bono endeavors. Serving as Law Guardians, on assigned counsel panels, as members of the Lawyers Referral Service and as participants in the new medical malpractice panels (Judiciary Law, § 148-a; L. 1974, ch. 146, as amd. by L. 1974, ch. 657) represent but a few instances .of such public work. If the court were constrained to appoint counsel to serve without compensation, it would be inclined to choose those attorneys who render a form of public service for which they are paid. Nonetheless, the court concludes that, in civil actions, lacking criminal overtones, counsel is not required to serve without compensation and, in fact, has the constitutional right to demand payment or reject the assignment. Civil litigants in such cases have no constitutional right to counsel (cf. Botein, Appointed Counsel for the Indigent Civil Defendant: A Constitutional Right Without A Judicial Remedy! 36 Brooklyn L. Rev. 368) and the policy of assigning unqompensated counsel to matrimonial litigants (Jacox v. Jacox, 43 A D 2d 716, supra; Smiley v. Smiley, 45 A D 2d 785, supra) must give way to the constitutional rights of counsel as protected under the due process clauses of the Fourteenth Amendment to the Federal Constitution and section 6 of article I of this State’s Constitution. In short, I am in full accord with the increasing number of jurisdictions that have adjudicated as constitutionally infirm the present system of court-appointed uncompensated counsel in civil cases.
COKCLTJSION
In sum, the court holds: (1) movants are indigents entitled to proceed as poor persons; (2) movants are not constitutionally or statutorily entitled to assignment of counsel; and, (3) uncompensated counsel is afforded to indigent matrimonial litigants as a matter of public policy, which policy gives way to the superior constitutional rights of the attorney to demand compensation as a condition for the representation. Accordingly, that portion of the motions which seeks leave to proceed as poor persons is granted and that portion which seeks assignment of counsel is denied. The orders appointing Marsha Greenfield, Esq,, as counsel for the plaintiff movants, are vacated.
The Legal Aid Society shall submit orders on notice within 20 days after the date of this decision.

. In 1974, a bill was presented to the State Legislature (S 4609, S 4609-A) that would have amended section 722 of the County Law to provide compensation for the representation of defendants in matrimonial actions. No action was taken on the bill.

. There is authority for the view that a refusal by assigned counsel to accept the assignment constitutes contempt of court (Ann. 36 ALR 3d 1221 Contempt-Attorney-Refusal to Defend). The rule in this State is that counsel must honor such appointment “ whenever his previously arranged professional engagements will permit ”. (People v. Thompson, 205 App. Div. 581, 582.)

. It is interesting to note the Reporter’s reaction to the Hadley (28 How. Prac. 22) decision, which statement is as viable today as it was in 1864: “ Note — This seems to be a very proper case for calling the attention of the legislature to the justice of passing a law to compensate counsel for such services. Although the courts have the strict right to assign counsel to take charge of the defence of prisoners under indictment, who are unable to employ counsel, yet the justice, equity, or even propriety of requiring this forced service without fee or reward, or hope of reward, is not perceived. If a young attorney just admitted to the bar is willing to volunteer the defence of such a ease, with the view of trying his wings on a little spread eagle eloquence, why, all right, *292 let him soar, free as air — free certainly of any pecuniary consideration. But it is a very different matter when, as in this case, a lawyer of many years standing at the bar, who usually has as much business that pays as he can attend to, is forced to take charge of the defence of a criminal, and has to go through the different courts on intricate and novel questions arising under a change of statutes bearing on the case, and on the final success of his efforts is left without compensation, save the satisfaction of having faithfully performed a duty which he would gladly have accepted a release from originally. Rep.”